Filed 6/5/14  P. v. Contreras CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

|  |  |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>ERIBERTO A. CONTRERAS,<br><br>Defendant and Appellant. | B247437<br><br>(Los Angeles County<br>Super. Ct. No. TA125726) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Laura R. Walton, Judge.  Affirmed as modified.

Matthew A. Siroka, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Chung L. Mar and Carl N. Henry, Deputy Attorneys General, for Plaintiff and Respondent.

\* \* \* \* \* \*

Appellant Eriberto A. Contreras appeals a judgment following his conviction and sentence for one count of making a criminal threat against his mother; one count of dissuading a witness, his mother; and two counts of assault against his father and a family friend. He contends his criminal threat conviction must be reversed because the trial court failed to sua sponte instruct the jury on the lesser included offense of attempted criminal threat. While we agree the trial court erred, we find the error harmless. He also contends the trial court improperly imposed a 10-year protective order preventing him from having contact with his mother when he is released from custody. We agree and vacate the protective order. Finally, the parties agree the trial court erred in failing to impose a sentence on the dissuading a witness count before staying its execution pursuant to Penal Code section 654.[1] Instead of remanding for resentencing, however, we will modify the judgment to impose the upper term on the dissuasion count and stay its execution pursuant to section 654. We affirm the judgment as modified.

## PROCEDURAL HISTORY

Following trial, a jury convicted appellant of felony criminal threats against his mother (Celia Contreras) (§ 422, subd. (a)); misdemeanor assault against his father (Jeronimo Contreras) (§ 242); misdemeanor assault against a family friend (Gabriel Contreras) (§ 242); and felony dissuading a witness, his mother (§ 136.1, subd. (b)(1)).[2] The trial court sentenced him to a total term of four years, which included an upper term of three years on the criminal threat conviction, and six months consecutive on each misdemeanor assault conviction.[3] The court stayed imposition of the sentence

---

[1]    All further statutory references are to the Penal Code unless otherwise noted.

[2]    Because the surnames of all the individuals involved are the same, we refer to them by first name for convenience only and intend no disrespect.

[3]    At the sentencing hearing, the trial court announced it was sentencing appellant to three months consecutive on the second assault conviction. However, the sentencing minute order and abstract of judgment indicated the term was six months consecutive, and both parties assume the trial court meant six months consecutive,

2

on the witness dissuasion count pursuant to section 654. The court imposed various fines, fees, and credits not at issue here. The court also imposed a 10-year protective order preventing appellant from contacting his mother once he is released from custody. Appellant timely appealed.

## STATEMENT OF FACTS

The series of events leading to appellant's conviction began when appellant and Celia accompanied family friend Gabriel to a swap meet on November 11, 2012. As they were leaving, Gabriel could not get his car started, so he and appellant tried to fix it. An argument ensued, and appellant punched Gabriel, damaging his glasses. Eventually Gabriel started the car and he and Celia drove to her apartment; appellant walked home and arrived sometime later.

Prior to appellant returning home, either Celia or Gabriel called appellant's father Jeronimo, who came over and waited for appellant.[4] While Celia and Gabriel were inside the apartment, appellant arrived and Jeronimo stopped him outside to talk. According to Gabriel's 911 call and statements he and Celia made to officers, at that point appellant argued with Jeronimo and punched him several times. Appellant then yelled at Celia, Gabriel, and Jeronimo to leave, and he began climbing the stairwell to the apartment. Celia yelled that she was going to call the police, and appellant yelled back, "If you call the police, I'll kill you," pointing to her. Gabriel and Celia left the apartment building and Jeronimo went home.

Gabriel called 911 and a recording of that call was played for the jury (translated from Spanish to English). Gabriel reported appellant was being "very aggressive" and had hit him and Jeronimo, so he and Celia were forced to leave the

---

which was in line with the prosecutor's recommendation. We also assume the trial court intended to impose two 6-month consecutive terms for the assault counts. Appellant was also on a current grant of probation for a prior offense, and the prosecutor asked for eight months consecutive for the probation violation. The court did not impose that sentence and instead terminated probation.

[4] Neither Gabriel nor Jeronimo testified at trial.

apartment. Police arrived and interviewed Gabriel and Celia at the scene. According to officers, Celia told them she feared appellant would harm her and wanted him arrested. After Celia gave officers her apartment key, they entered the apartment and arrested appellant. Early the next day, Celia spoke with police and she agreed to apply for an emergency protective order against appellant, which officers obtained.

At trial, Celia denied most of these events occurred and denied telling officers about them, including that appellant punched Gabriel, that appellant yelled at and assaulted Jeronimo, that appellant told her to leave her apartment, that appellant threatened her, and that she requested an emergency protective order. She also denied that she was concerned for her safety at the time or that she told officers she no longer wanted appellant there.

Celia also testified to her history with appellant. They have always lived together. She believes he suffers from depression and hears voices, and she previously told police he had been diagnosed as schizophrenic. When he gets these symptoms, he becomes angry and "aggressive with anybody around him" and has harmed himself. During these episodes, Celia would leave the apartment until he calmed down, although she claimed she was not afraid of him during these times. Celia would also go to the police for help, and in the 15-month period leading up to appellant's arrest in this case, she sought help from police more than 10 times.

She testified to several prior incidents with appellant. In June 2006, for example, he threw a broomstick at her, bruising her leg. At trial she initially denied the incident occurred, but then admitted it took place. She denied being afraid of appellant at the time.

In December 2011, she went to the police station and asked for appellant to be placed on a hospital "hold" for his mental health issues, but officers declined because he had calmed down by the time they arrived at her apartment.

In February 2012, she called 911 because appellant had punched her in the head. She said at the time she wanted appellant "to be out in the street to feel how it is, you know, different than living with mom," but she admitted she did not actually

4

want him out.  She declined to make a police report or a citizen's arrest and did not ask for help hospitalizing appellant, although he was hospitalized for a few days as a result of the incident.  As with the June 2006 incident, at trial Celia initially denied appellant hit her or she called 911 (she claimed to have gone to the police station in person), but then admitted it had happened and she had called 911.

A responding officer testified that, in March 2012, Celia left her apartment because appellate became aggressive with her.  At trial Celia admitted officers came to her apartment but she denied telling them appellant became aggressive with her and she left their apartment for that reason.  She claimed she was not afraid of appellant at the time.

## DISCUSSION

### 1.  *Attempted Criminal Threats Instruction*

"""The trial court is obligated to instruct the jury on all general principles of law relevant to the issues raised by the evidence, whether or not the defendant makes a formal request."'  [Citation.]  'Conversely, even on request, the court "has no duty to instruct on any lesser offense unless there is substantial evidence to support such instruction."'  [Citation.]  This substantial evidence requirement is not satisfied by "'*any* evidence . . . no matter how weak,'" but rather by evidence from which a jury composed of reasonable persons could conclude 'that the lesser offense, but not the greater, was committed.'  [Citation.]"  (*People v. Avila* (2009) 46 Cal.4th 680, 704-705.)  "In deciding whether there is substantial evidence of a lesser offense, courts should not evaluate the credibility of witnesses, a task for the jury."  (*People v. Breverman* (1998) 19 Cal.4th 142, 162 (*Breverman*).)  "'On appeal, we review independently the question whether the trial court failed to instruct on a lesser included offense.'  [Citation.]"  (*Avila, supra*, at p. 705.)  The failure to instruct on a lesser included offense is cognizable on appeal even when a defendant fails to request the instruction in the trial court.  (*Breverman, supra*, at p. 154;  see § 1259.)

Section 422, subdivision (a) provides, "Any person who willfully threatens to commit a crime which will result in death or great bodily injury to another person,

5

with the specific intent that the statement, made verbally, in writing, or by means of an electronic communication device, is to be taken as a threat, even if there is no intent of actually carrying it out, which, on its face and under the circumstances in which it is made, is so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat, and thereby causes that person reasonably to be in sustained fear for his or her own safety or for his or her immediate family's safety, shall be punished by imprisonment in the county jail not to exceed one year, or by imprisonment in the state prison." (See *People v. Toledo* (2001) 26 Cal.4th 221, 227-228 (*Toledo*).)

A defendant can be convicted of an attempted criminal threat under section 422 if he or she acts with the required intent "but, for whatever reason, the threat does not *actually* cause the threatened person to be in sustained fear for his or her safety even though, under the circumstances, that person reasonably could have been placed in such fear . . . ." (*Toledo, supra*, 26 Cal.4th at p. 231.) Attempted criminal threat is a lesser included offense of criminal threat. (*In re Sylvester C.* (2006) 137 Cal.App.4th 601, 607.)

Appellant argues the trial court was required to instruct the jury on attempted criminal threat, even though he did not request the instruction, because at trial Celia denied being afraid of appellant when he threatened her. We agree. While the jurors must have believed appellant threatened Celia with the requisite intent, they could have also believed Celia's trial testimony that she was not afraid of him, even though officers testified she said she was afraid on the night appellant threatened her. If so, that would have created reasonable doubt as to whether Celia actually feared for her safety when appellant threatened her, supporting a conviction for the lesser crime of attempted criminal threat. Because we cannot evaluate Celia's credibility (*Breverman, supra*, 19 Cal.4th at p. 162), substantial evidence supported giving the attempted criminal threat instruction and the trial court erred in failing to do so.

The error was harmless, however. We review the failure to instruct on lesser included offenses under *People v. Watson* (1956) 46 Cal.2d 818, 836, to determine

6

whether, "'after an examination of the entire cause, including the evidence' [citation], it appears 'reasonably probable' the defendant would have obtained a more favorable outcome had the error not occurred [citation]." (*Breverman, supra*, 19 Cal.4th at p. 178.) In making this evaluation, we "may consider, among other things, whether the evidence supporting the existing judgment is so *relatively* strong, and the evidence supporting a different outcome is so *comparatively* weak, that there is no reasonable probability the error of which the defendant complains affected the result." (*Id.* at p. 177.)

The evidence demonstrating Celia's fear of appellant was overwhelming. She had a history with appellant's aggression and violence, which she addressed by calling the police more than 10 times in a 15-month period and leaving their apartment until he calmed down. On two prior occasions, appellant hit her, once with a broomstick, and once with his fist. On the night of appellant's threat, he punched Gabriel and Jeronimo and threatened to kill Celia if she called the police. While Celia denied these events occurred, the jury must have disbelieved her as it convicted appellant of two counts of assault, one count of making a criminal threat, and one count of dissuading a witness. Officers also testified at the time these events took place Celia told them she was afraid of appellant, and she gave them her apartment key to arrest him. The next day she agreed to apply for an emergency protective order, which officers obtained.

None of Celia's prior actions were consistent with her testimony that she did not fear appellant and the only rational inference from the evidence was that Celia was actually afraid of appellant at the time he threatened her. Because on this record no reasonable jury would have convicted appellant of the lesser offense of attempted criminal threat, the trial court's failure to give a sua sponte attempted criminal threat instruction was harmless and reversal is not required.

## 2. *Protective Order*

### A. *Background*

At the end of appellant's sentencing and without citing any authority, the trial court sua sponte asked if the prosecution was seeking a protective order for Celia. The

prosecutor responded in the affirmative and requested a 10-year protective order. Defense counsel indicated Celia "does not want a protective order from her son" and inquired, "Is the court going to impose that punishment on Ms. Contreras?" The court said, "Yes. The court's going to [impose] it. He may get out, and Ms. Contreras may not follow it, and I got a feeling that she won't. And the court is going to impose, and it suggests, that he needs to find other living arrangements once he is released. [¶] Whether or not she violates that and allows him to come back is something completely different, but until he is released or receives some type of counseling that assists him in controlling his emotional and anger outbursts, she needs a protective order, whether she realizes it or not."

Defense counsel noted the protective order would be imposed on appellant, not Celia, and "[i]f she allows him at home, then the police are going to come and pick [appellant] up for violation of the court order, and we'll find ourselves back in front of this court for the same reason." The court agreed, noting that, "once she allows him home and he gets out of control again, counsel, and she calls the police, like she has a history of doing -- you're absolutely correct, the police should come and arrest him if that does occur, absolutely, for her protection. That's exactly what should happen and that's what the court's intention is to happen." The court declined to issue an order related to appellant's father and noted appellant "needs to find another relative to live with" other than Celia once out of custody.

In order to permit Celia to visit appellant while in custody, the court made the protective order effective upon his release. No written protective order was included in the record on appeal, but the court orally outlined its terms including, as relevant here, that appellant could not "harass, attack, strike, threaten, assault, hit, follow, stalk, molest, sexually or otherwise, destroy the personal or real property, disturb the peace, keep under surveillance, or block movements of" Celia; he could "have no personal, electronic, telephonic, or written contact" with her upon his release from custody; he could not come within 100 yards of her; and she may record any prohibited conversation with him.

8

On May 9, 2014, after this case was submitted for decision, we granted appellant's request for a temporary stay of the stay-away portions of the protective order because he was scheduled to be released from custody on May 13, 2014, and he indicated he would have nowhere to live if he could not return to Celia's home. In the petition, he reiterated both he and Celia wanted the order lifted. According to medical records, he now has a significant medication regimen, with a prognosis of "[f]air" if he remains medication-compliant and "follows discharge aftercare plans."

*B. Analysis*

"Several statutes permit entry of a protective order under certain circumstances in a criminal case," but the Attorney General does not rely on any of them here. (*People v. Robertson* (2012) 208 Cal.App.4th 965, 996 (*Robertson*).)[5] Instead, the Attorney General argues the protective order was authorized by the trial court's

---

[5] Nor would those statutes have authorized the court's protective order. "For example, section 136.2, subdivision (a) authorizes issuance of a protective order during the duration of criminal proceedings. Yet, this statute does not authorize issuance of a protective order against a defendant who has been sentenced to prison unless the defendant has been convicted of domestic violence." (*Robertson, supra*, 208 Cal.App.4th at p. 996; see *People v. Ponce* (2009) 173 Cal.App.4th 378, 382-383 (*Ponce*); *People v. Selga* (2008) 162 Cal.App.4th 113, 118-119.) "Section 1203.1, subdivision (i)(2), which authorizes a no-contact order in some sex offense cases, only applies where the defendant is granted probation." (*Robertson, supra*, at p. 996.) Likewise, section 1203.1, subdivision (j) authorizes imposition of a stay-away order, but only as a condition of probation. (*People v. Petty* (2013) 213 Cal.App.4th 1410, 1423; *Selga, supra*, at p. 118.) "Section 1201.3, subdivision (a) authorizes a no-contact order for a period of up to 10 years but only when the defendant was convicted of a sexual offense involving a minor victim." (*Robertson, supra*, at p. 996.) Section 1203.097 requires issuance of a protective order for certain victims of domestic violence, but only as a condition of probation. (*Selga, supra*, at p. 119.) Section 646.9, subdivision (k) authorizes a 10-year protective order but only for a stalking offense. Section 273.5, subdivision (j) authorizes a 10-year restraining order after a conviction of corporal injury on a spouse or cohabitant, including when the defendant is sentenced to state prison, but the statute does not apply to appellant and his mother. (*People v. Belton* (2008) 168 Cal.App.4th 432, 438 [Cohabitation in this statute "refers to an unrelated couple 'living together in a substantial relationship—one manifested, minimally, by permanence and sexual or amorous intimacy.'"].)

9

inherent power based on certain victims' rights provisions in the California Constitution, including to be "free from intimidation, harassment, and abuse, through the criminal or juvenile justice process," "[t]o be reasonably protected from the defendant and persons acting on behalf of the defendant," and "[t]o have the safety of the victim and the victim's family considered in fixing the amount of bail and release conditions for the defendant." (Cal. Const., art. I, § 28, subd. (b)(1)-(3).) The Attorney General also analogizes to the trial court's inherent authority to protect jurors once they are discharged. (*Townsel v. Superior Court* (1999) 20 Cal.4th 1084, 1091.)

At least one court has questioned whether trial courts retain inherent authority to issue protective orders like the one in this case because "[w]here the Legislature authorizes a specific variety of available procedures, the courts should use them and should normally refrain from exercising their inherent powers to invent alternatives." (*Ponce, supra*, 173 Cal.App.4th at p. 384 ["An existing body of statutory law regulates restraining orders. '"[I]nherent powers should never be exercised in such a manner as to nullify existing legislation . . . ."'"].) But we need not decide this issue because "'even where a court has inherent authority over an area where the Legislature has not acted, this does not authorize its issuing orders against defendants by fiat or without any valid showing to justify the need for the order.'" (*Robertson, supra*, 208 Cal.App.4th at p. 996; see *Ponce, supra*, at p. 384.) Here, there was no showing of justification.

The Attorney General has cited no case authorizing the trial court to impose a stay-away order against appellant to protect his mother when neither individual wanted or requested such an order. Nor did the circumstances here justify issuing such an order overriding their wishes. While appellant was convicted of threatening Celia and dissuading her from calling the police on the night of the incident, the prosecutor made no showing that at any time "after being charged appellant had threatened a witness or had tried to unlawfully interfere with the criminal proceedings." (*Robertson, supra*, 208 Cal.App.4th at p. 996; see *Ponce, supra*, 173 Cal.App.4th at p. 384.) Appellant also had a history of becoming aggressive with and even hitting Celia, but Celia made

10

clear in her trial testimony she was not afraid of him (even though the evidence demonstrated otherwise). When appellant's counsel told the trial court Celia did not want the protective order, the trial court rather paternalistically responded, "she needs a protective order, whether she realizes it or not." Appellant was her son, and she had experience dealing with his condition. Although she tended to call the police when he acted out, appellant's history with her was not so violent that the trial court could properly keep Celia from her son for 10 years after he got out of prison against both their wishes.

The protective order was also overbroad in both duration and scope. The trial court gave no reason why the order had to last 10 years after appellant is released from custody. The trial court itself suggested Celia only needed the protective order until appellant "receives some type of counseling that assists him in controlling his emotional and anger outbursts," but the court did not set any future review to ensure the protective order was still needed on an ongoing basis. Indeed, based on appellant's submissions in support of his request for an emergency stay, he has been placed on a medication regimen and been given a "[f]air" prognosis, suggesting he may be able to adequately manage his anger issues upon release, obviating the need for a protective order entirely. The order also prevented *all* contact between Celia and appellant after his release without any showing that was necessary. Celia and appellant lived together all appellant's life, and nothing suggested every moment they spent together was filled with the aggression that led to the prior incidents or the current case, so it does not appear a complete no-contact order was warranted.

Perhaps most important, the trial court recognized the protective order would likely be ineffective because Celia would "do what many mothers do. She will put his best interests in front of her own, which she has done time and time again, and she would allow him to come back and live with her." So the court intended that, if appellant did return to living with Celia and "gets out of control again . . . and she calls the police, like she has a history of doing . . . , the police should come and arrest him . . . for her protection." In other words, because the order would not prevent

11

contact between appellant and Celia, the court wanted to enable police to arrest appellant when and if Celia calls the police again, even if appellant has not committed any specific crime at that time other than violating the protective order, which was already expected. Having recognized appellant and Celia would violate the protective order, the trial court erred in undertaking an otherwise idle act to ensure police might have a future ground to arrest appellant, whether or not he committed an independent crime.

Again, we are not deciding whether a protective order in favor of a victim is ever permissible under a trial court's inherent authority. But under the circumstances here, the trial court erred in imposing the 10-year order now for future circumstances that may not warrant it. The protective order must be vacated.[6]

### 3. Stay of Sentence Pursuant to Section 654

The parties agree the trial court erred in failing to impose a sentence on the dissuading a witness count before staying its execution pursuant to section 654. (*People v. Alford* (2010) 180 Cal.App.4th 1463, 1469.) In lieu of remanding for resentencing, we accept the Attorney General's invitation to modify appellant's sentence to impose the upper term of three years on the dissuasion count (§§ 136.2, 1170, subd. (h)(1)) and stay execution of that sentence pursuant to section 654. (*Alford*, at p. 1474.) We impose the upper term because we have no doubt the trial court would have done so, given the dissuasion count involved the same facts and conduct as the criminal threat count. (*Ibid.*)

### DISPOSITION

The 10-year protective order is vacated. The judgment is modified to reflect the upper term of three years for the dissuasion count, which is stayed pursuant to section 654. In all other respects, the judgment is affirmed. The clerk of the superior court is

---

[6] The protective order contained additional terms, but the Attorney General has not sought to preserve those terms apart from the stay-away portions of the order, and we do not believe the trial court would have imposed the protective order without the stay-away provisions. We therefore vacate the order in toto.

ordered to issue an amended abstract of judgment and forward a copy to the Department of Corrections and Rehabilitation.


                              FLIER, J.

WE CONCUR:


    BIGELOW, P. J.


    GRIMES, J.


13