[No. B209918. Second Dist., Div. Six. Mar. 25, 2009.]

THE PEOPLE, Plaintiff and Respondent, v.
RUBEN PONCE, Defendant and Appellant.

## COUNSEL

John F. Schuck, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Scott A. Taryle and Douglas L. Wilson, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**GILBERT, P. J.**—Here we advise judicial restraint when issuing a restraining order.

Ruben Ponce appeals a sentencing order made after his no contest plea to second degree robbery (Pen. Code, § 211) and his admission that he committed the offense for the benefit of a street gang (§ 186.22, subd. (b)(1)(C)).[1] Ponce was sentenced to an aggregate term of 13 years in state prison. We conclude, among other things, that the trial court erred by issuing a three-year protective order against Ponce per section 136.2 at sentencing. There was no evidence that Ponce had threatened witnesses during the proceedings. We strike the protective order but, in all other respects, affirm.

### FACTS

Jesus Lucero was delivering flowers when Ponce and another man approached him. Ponce tucked his hand inside his waistband to simulate "what appeared to be a handgun." Ponce said, "Eastside Bolen. You bang." Lucero replied, "I don't bang." Ponce repeated, "Eastside Bolen, you better recognize."

---

[1] All statutory references are to the Penal Code.

Lucero believed that Ponce and his companion were armed. The two of them took $51 from Lucero. Ponce also took Lucero's cellular phone from his hand. Ponce and his companion were arrested after Lucero called the police to report that he had been robbed.

At Ponce's sentencing hearing, the prosecutor requested the court to issue a protective order for Lucero. He did not make an offer of proof or explain the reason for this request.

The court granted this request and signed a criminal protective order using Judicial Council form CR-160, entitled "Criminal Protective Order— Domestic Violence (CLETS-CPO) (Penal Code, §§ 136.2 and 1203.097(a)(2)." The order provides, in relevant part, "GOOD CAUSE APPEARING, THE COURT ORDERS THAT THE ABOVE-NAMED DEFENDANT [Ponce] [¶] . . . must not harass, strike, threaten, assault . . . , follow, stalk, molest, destroy or damage personal or real property, disturb the peace, keep under surveillance, or block movements of . . . [Lucero] . . . . [¶] [Ponce] must not attempt to or actually prevent or dissuade any victim or witness from attending a hearing or testifying or making a report to any law enforcement agency or person."

The order also required Ponce to "have no personal, electronic, telephonic, or written contact" with Lucero. It prohibited him from making contact with Lucero "through a third party, except an attorney of record" and from coming "within 100 yards" of him. The court signed the order on June 10, 2008. The order provides, "[T]his order expires three years from the date of issuance."

## DISCUSSION

### *The Protective Order*

The three-year protective order the trial court issued was not authorized by section 136.2.

### A. *Waiver*

The Attorney General claims Ponce waived this issue by not raising it in the trial court. He is correct that this issue was not raised there. As a general rule, an appellant waives issues on appeal that he or she did not initially raise in the trial court. (*People v. Smith* (2001) 24 Cal.4th 849, 852 [102 Cal.Rptr.2d 731, 14 P.3d 942].) But there are exceptions to this rule for unauthorized sentences and sentencing decisions that are in excess of the trial court's jurisdiction. (*Ibid.*) Because this case involves the jurisdictional validity of

the trial court's decision to issue a three-year protective order during sentencing, we will consider Ponce's claim on the merits.

## B. *Statutory Authority*

■    Section 136.2[2] permits the trial court in a criminal case to protect a witness or a victim by issuing a protective order. (*People v. Selga* (2008) 162 Cal.App.4th 113, 118 [75 Cal.Rptr.3d 453].) "Under section 136.2 . . . , during the pendency of a criminal proceeding when the court has a 'good cause belief that harm to, or intimidation or dissuasion of, a victim or witness has occurred or is reasonably likely to occur,' the court is authorized to issue a restraining order." (*Ibid.*) But orders issued under this section are of a limited duration. The trial court has jurisdiction to issue one only during " 'the pendency of [a] criminal action' " before it. (*Ibid.*)

The Attorney General suggests that the trial court did not issue the order under section 136.2. He notes that the court signed Judicial Council protective order form CR-160, which is utilized to issue: (1) criminal protective orders under section 136.2, (2) domestic violence protective orders under section 1203.097, or (3) "posttrial probation condition" orders. He argues that because the court did not check the boxes on the form, it did not necessarily issue the order under category one, the criminal protective order under section 136.2. We disagree.

Category two does not apply because this was not a domestic violence case. Category three is not applicable because Ponce was sentenced to prison and not placed on probation. The court issued the protective order under the remaining category, section 136.2. The minute order reflects that the court was issuing a "protective order *in criminal proceedings* . . . ." (Italics added.) Consequently the order must comply with the requirements of section 136.2. (*People v. Selga, supra,* 162 Cal.App.4th at p. 118.)

Ponce contends that the three-year protective order issued during sentencing was unauthorized because under section 136.2 the duration of the order may not extend beyond the trial court's jurisdiction over the criminal case. The Attorney General disagrees and claims that the statute on its face does not place any time limit on the duration of the order, therefore he claims that the three-year order was proper.

---

[2] Section 136.2, subdivision (a) provides in relevant part, "Except as provided in subdivision (c), upon a good cause belief that harm to, or intimidation or dissuasion of, a victim or witness has occurred or is reasonably likely to occur, any court with jurisdiction over a criminal matter may issue orders including, but not limited to, the following: [¶] . . . [¶] (4) An order that any person described in this section shall have no communication whatsoever with any specified witness or any victim . . . ."

■ But the Attorney General's position has been rejected by appellate courts. In *People v. Stone* (2004) 123 Cal.App.4th 153, 159 [19 Cal.Rptr.3d 771], the Court of Appeal stated, "Although section 136.2 does not indicate on its face that the restraining orders it authorizes are limited to the pendency of the criminal action in which they are issued or to probation conditions, it is properly so construed." The court said, "[T]he absence of any express time limitation on the duration of a restraining order issued under section 136.2 suggests that its duration is limited by the purposes it seeks to accomplish in the criminal proceeding." (*Ibid.*) Its "only purpose is to protect victims and witnesses in connection with the criminal proceeding in which the restraining order is issued in order to allow participation without fear of reprisal." (*Ibid.*)

The Court of Appeal in *Stone* noted that there were other statutory provisions that provided for long-term protective orders, but those provisions set forth numerous procedural protections for persons subject to them. Consequently, the court concluded that the Legislature intended a "narrower scope" for section 136.2 orders so that they would be limited to "the proceedings before the criminal court." (*People v. Stone, supra,* 123 Cal.App.4th at p. 159.) It said that if the duration was "not so limited, restraining orders under section 136.2 would usurp the similar restraining orders obtainable under Code of Civil Procedure section 527.6, and under-mine the numerous procedural protections for the restrainee afforded by that section." (*Id.* at pp. 159–160.)

*Stone* held that a three-year restraining order (like the one here) was not authorized by the statute. "Here, the restraining orders were issued for three years. They were not limited to the pendency of the criminal proceeding and were not a probation condition, as appellant was not given probation. The restraining orders therefore transcended the authorization of section 136.2 and must be reversed." (*People v. Stone, supra,* 123 Cal.App.4th at p. 160.)

■ In *People v. Selga, supra,* 162 Cal.App.4th at pages 118–119, a more recent case, the Court of Appeal agreed that this statute authorizes only a limited-duration protective order. It held that section 136.2 protective orders are "operative only during the pendency of criminal proceedings and as prejudgment orders." (*Selga,* at pp. 118–119.) Consequently the three-year protective order issued in this case during sentencing is invalid. (*Ibid.*; *People v. Stone, supra,* 123 Cal.App.4th at p. 160.)

### C.  *Inherent Authority*

■ The Attorney General argues that, notwithstanding section 136.2, trial courts, independent of statute, have inherent authority to issue appropriate protective orders to protect trial participants. (*Townsel v. Superior Court*

(1999) 20 Cal.4th 1084, 1091 [86 Cal.Rptr.2d 602, 979 P.2d 963].) Even had the court relied on "inherent judicial authority" to issue its order, the result would not change. An existing body of statutory law regulates restraining orders. " '[I]nherent powers should never be exercised in such a manner as to nullify existing legislation . . . .' " (*People v. Municipal Court (Runyan)* (1978) 20 Cal.3d 523, 528 [143 Cal.Rptr. 609, 574 P.2d 425], italics omitted.) Where the Legislature authorizes a specific variety of available procedures, the courts should use them and should normally refrain from exercising their inherent powers to invent alternatives. (*People v. Trippet* (1997) 56 Cal.App.4th 1532, 1550 [66 Cal.Rptr.2d 559].)

Moreover, even where a court has inherent authority over an area where the Legislature has not acted, this does not authorize its issuing orders against defendants by fiat or without any valid showing to justify the need for the order. (*Bitter v. United States* (1967) 389 U.S. 15, 16 [19 L.Ed.2d 15, 88 S.Ct. 6].) The Attorney General relies on *Townsel* where our Supreme Court held that a trial court in a criminal case had inherent authority to order the defendant's appellate counsel not to contact trial jurors without first obtaining its approval. But there the court held that the trial court's exercise of discretion to limit contact with jurors was supported by "circumstances" that raised "serious concerns about juror safety." (*Townsel v. Superior Court, supra,* 20 Cal.4th at p. 1097.) The court noted that the defendant had been convicted of murdering one victim "because she was a witness to a previous crime . . . ." (*Ibid.*) It said the defendant "was also convicted of attempting to prevent or dissuade a witness." (*Ibid.*) Consequently the trial court's order was justified because of the defendant's history of interfering with the judicial process by killing or threatening witnesses.

■ In *People v. Stone, supra,* 123 Cal.App.4th at page 160, the Court of Appeal held that a protective order could not be sustained without a showing of "a threat, or likely threat *to criminal proceedings or participation in them.*" (Italics added.) The court said, "There was no evidence . . . that after being charged in this matter, [defendant], or anyone on his behalf . . . , made any efforts by threat or force to dissuade either [victim] from testifying against him or proceeding with the prosecution. The fact that [defendant] had assaulted both of them before there were any criminal proceedings, and without any intent to interfere with such proceedings, is insufficient to justify the restraining orders." (*Id.* at pp. 160–161.)

Here there was no evidence that after being charged Ponce had threatened, or had tried to dissuade, any witness, or had tried to unlawfully interfere with the criminal proceedings. The prosecutor did not make an offer of proof or any argument to justify the need for a protective order. He simply said, "[W]e'd also like to have a stay-away order in this case . . . ." But a

prosecutor's wish to have such an order, without more, is not an adequate showing sufficient to justify the trial court's action. (*People v. Stone, supra,* 123 Cal.App.4th at pp. 160–161.)

█ The Attorney General claims that we should reject *Stone,* and rely instead on the Ninth Circuit's decision in *Wheeler v. United States* (9th Cir. 1981) 640 F.2d 1116. We, however, "are not bound by the decisions of the lower federal courts even on federal questions." (*People v. Bradley* (1969) 1 Cal.3d 80, 86 [81 Cal.Rptr. 457, 460 P.2d 129].) But, even so, *Wheeler* does not assist the Attorney General. There a trial judge issued a no-contact order against a defendant. The court found that during trial the defendant "was trying to force [a witness] to commit perjury." (*Wheeler,* at p. 1118, fn. 2.) The Ninth Circuit said that, using its inherent power, "It is possible, in a particular situation, that a [federal] trial court would be warranted in issuing an order to protect a witness . . . even though the trial was over." (*Id.* at p. 1124.) But the court stressed that "post-trial orders to protect witnesses are extraordinary in character *and to be issued only in rare instances.*" (*Id.* at p. 1124, fn. 15, italics added.) Even where a defendant has previously harassed a witness at trial, to issue a posttrial witness protection order, the trial court must still determine "the necessity of protecting [the witness] under the facts as they presently exist." (*Id.* at p. 1126.) To obtain such an order, the prosecution must make a strong showing of a " 'clear and present danger or a serious and imminent threat,' " and must demonstrate that there are no other available alternatives. (*Id.* at p. 1124.) But even using the *Wheeler* standard, the order in this case may not be sustained because here the prosecution made no showing at all.

The Attorney General also cites a Seventh Circuit case, *U.S. v. Morris* (7th Cir. 2001) 259 F.3d 894, for the proposition that a federal court has inherent authority to issue an order prohibiting contact with witnesses after the defendant has pled guilty. But as Ponce correctly notes, the court in *Morris* concluded that the exercise of such inherent authority must be very limited. It said, "[T]he use of no-contact orders must be reserved for rare and compelling circumstances . . . ." (*Id.* at p. 901.) But it also concluded that the prosecution had met this strong burden. The prosecutor presented testimony proving that while in prison the defendant had contacted the child victim and had also utilized third parties to relay messages to her. The court noted that, because the defendant had moved to set aside his guilty plea, the child might have to testify at a future trial, and there was a danger she would become "a reluctant witness." (*Ibid.*) It said the order was necessary to protect her and her family "from further harassment" by the defendant. (*Ibid.*) Here, unlike in *Morris,* there was no showing by the prosecution that Lucero had been harassed or contacted by Ponce, or by anyone acting on his behalf, during his incarceration. Ponce also notes that there is nothing in this record to show that Lucero ever requested the prosecutor to seek this order.

The protective order is stricken. In all other respects, the judgment is affirmed.

Coffee, J., and Perren, J., concurred.

On April 24, 2009, the opinion was modified to read as printed above.