Filed 4/7/15  P. v. Jimenez CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE OF THE STATE OF CALIFORNIA,<br><br>      Plaintiff and Respondent,<br><br>            v.<br><br>RAFAEL JIMENEZ,<br><br>      Defendant and Appellant. | F068241<br><br>(Super. Ct. No. CRM019815)<br><br>**OPINION** |

-ooOoo-

## THE COURT*

APPEAL from a judgment of the Superior Court of Merced County.  Marc Garcia, Judge.

John F. Schuck, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Gerald A. Engler, Chief Assistant Attorneys General, Michael P. Farrell, Assistant Attorney General, Louis M. Vasquez and Charity S. Whitney, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

\*      Before Kane, Acting P.J., Poochigian, J. and Smith, J.

Appellant Rafael Jimenez pled no contest to committing a lewd act on a child at least 10 years younger (count 1/Pen. Code, § 288, subd. (c)(1))[1] and two counts of lewd and lascivious conduct with a child under the age of 14 (counts 2 & 10/§ 288, subd. (a)).

On appeal, Jimenez contends: (1) the protective order issued by the court must be stricken; and (2) the order requiring him to undergo Acquired Immune Deficiency Syndrome (AIDS) testing is not supported by substantial evidence. We will find merit to Jimenez's first contention and strike the protective order. In all other respects, we will affirm.

## FACTS

Jimenez lived in Livingston and is the uncle of S.M., R.M., and J.R. In 2005, at age 14, S.M. went to live with her grandparents in Livingston. When S.M. was 15 years old she sometimes helped Jimenez at his office. On some occasions, Jimenez would try to kiss her on the mouth and hug her, which made her feel uncomfortable. Sometimes he succeeded in kissing her and he would put his lips against hers and push his tongue in her mouth. A few times Jimenez tried to reach under her shirt but she pushed him away. Other times, he would touch her chest over her clothes. Jimenez also would touch S.M.'s buttocks over her clothes. On two occasions, he put his hand under her skirt and moved it up her legs.

Jimenez bought S.M. a cell phone and paid her phone bill because she helped him at the office. The day he bought the phone, he took her to his house on the pretext that he needed to pick up something. While at the house, S.M. went into his bedroom at Jimenez's direction. Jimenez then attempted to put S.M. on the bed. He also kissed her and placed his tongue in her mouth. S.M. resisted and after a few minutes he stopped and they left the house.

---

[1] All further statutory references are to the Penal Code.

On another occasion, when S.M. spent the night at Jimenez's house, S.M. slept on a couch and woke up in the middle of the night to find Jimenez standing above her wearing only underwear and watching her sleep.

When S.M. was 16 years old she moved back in with her mother in Antioch. However, after she turned 18 she returned to live with her grandparents in Livingston and the kissing and touching by Jimenez started again.

R.M. visited Livingston almost every weekend when she was growing up. Around 2001, when R.M. was eight or nine years old, Jimenez began touching her inappropriately and telling her she was pretty and that he wished she were his. This happened almost every weekend that she visited Livingston. The first time Jimenez touched R.M., she was at Jimenez's house getting ready to go to bed and wearing a nightgown. As she lay on the bed, Jimenez came up to her and began rubbing her buttocks, back, neck, and chest over her clothes. On another occasion, when she was in sixth grade, R.M. was sleeping in a room at Jimenez's house when Jimenez came in and began rubbing her body over her clothes. Jimenez also rubbed R.M.'s vagina over her clothes on one occasion.

In August 2010, J.R., who was 10 years old, spent the night at Jimenez's house. In the morning, Jimenez followed her as she went into his room to get some of her belongings. Jimenez then asked her if she would flex her chest. She initially refused, but he insisted she try, and when she attempted to comply Jimenez put his hand down her shirt and under her bra. However, he removed it quickly because J.R.'s brothers were coming into the room. Later that day, Jimenez gave J.R. $5.00. Jimenez also offered to pay J.R. if she stayed at his house but she refused.

After the above incidents came to light, Jimenez fled to Mexico. However, he was arrested in Manteca on September 29, 2011.

On May 15, 2012, the district attorney filed an information charging Jimenez with lewd and lascivious conduct with a child 14 or 15 years of age while being 10 years older

3

than the child (§ 288, subd. (c)(1)) and nine counts of lewd and lascivious conduct with a child under the age of 14 (§ 288, subd. (a)).

On March 6, 2013, Jimenez entered his plea to three counts in exchange for the dismissal of the remaining counts and a lid of six years.

On September 27, 2013, the court sentenced Jimenez to an aggregate term of five years eight months, the mitigated term of three years on count 2, a consecutive two-year term (one third the middle term of six years) on count 10, and a consecutive eight-month term (one-third the middle term of two years) on count 1. The court also issued a protective order prohibiting Jimenez from contacting any of the three victims.

## DISCUSSION

*The Protective Order*

The court did not cite the statutory authority it relied on to issue its protective order. In his opening brief, Jimenez assumed that the court issued the order pursuant to section 1202.05 subdivision (a)[2] and he contended the order was inapplicable as to S.M. and R.M. because they were each over 18 years of age when he was sentenced, and overbroad as to J.R. who was under the age of 18 at the time.

After the briefs in this matter were filed, Jimenez augmented the record to include a copy of the court's signed protective order which indicates it was issued pursuant to section 136.2. This section allows a court to issue a protective order, "Upon a good cause belief that harm to, or intimidation or dissuasion of, a victim or witness has occurred or is reasonably likely to occur …." (§ 136.2, subd. (a)(1).)

---

**2**    Section 1202.05, subdivision (a) in pertinent part provides: "Whenever a person is sentenced to the state prison on or after January 1, 1993, for violating Section 261, 264.1, 266c, 285, 286, 288, 288a, 288.5, or 289, and the victim of one or more of those offenses is a child under the age of 18 years, the court shall prohibit all visitation between the defendant and the child victim.…"

4

On February 5, 2015, this court allowed the parties to file a supplemental brief in this matter in light of the augmentation into the record of the court's protective order. Jimenez filed a letter brief contending that orders pursuant to section 136.2 are limited to proceedings that are pending in the trial court. (*People v. Ponce* (2009) 173 Cal.App.4th 378, 382 (*Ponce*).) Thus, according to Jimenez, the order was unauthorized because there were no pending trial proceedings and it should be stricken.

Respondent concedes that the trial court did not have authority pursuant to section 136.2 to issue a protective order. Respondent, however, contends that the court's issuance of an order indicates the court intended to prohibit Jimenez from contacting the victim and it could have issued a protective order pursuant to section 1201.3.[3] Thus, according to respondent, the matter should be remanded to the trial court so that it may exercise its discretion.

We agree that the court did not have authority to issue a protective order pursuant to section 136.2 because with the sentencing of Jimenez the proceedings in the trial court concluded. (See *Ponce, supra,* 173 Cal.App.4th at p. 382.) However, we disagree with respondent that the matter should be remanded to the trial court to allow it to exercise its discretion.

"[E]ven where a court has inherent authority over an area where the Legislature has not acted, this does not authorize its issuing orders against defendants by fiat or without any valid showing to justify the need for the order." (*Ponce*, *supra*, 173 Cal.App.4th at p. 384.) "[A] prosecutor's wish to have such an order, without more, is

---

[3] Section 1201.3 subdivision (a) provides: "Upon the conviction of a defendant for a sexual offense involving a minor victim or, in the case of a minor appearing in juvenile court, if a petition is admitted or sustained for a sexual offense involving a minor victim, the court is authorized to issue orders that would prohibit the defendant or juvenile, for a period up to 10 years, from harassing, intimidating, or threatening the victim or the victim's family members or spouse." The no-contact order here is much broader than the statute's prohibition against harassment, intimidation and threats.

not an adequate showing sufficient to justify the trial court's action." (*Id.* at pp. 384-385.)

The prosecutor did not make an offer of proof or any argument in the trial court justifying a no-contact protective order. Nor has respondent pointed to any evidence in the record that would support such an order. Consequently, we reject respondent's contention that this matter should be remanded to the trial court so that it may consider whether to issue an order pursuant to section 1201.3.

*The Order Requiring AIDS Testing*

Jimenez contends the "AIDS testing order is without evidentiary support" because the record does not contain any evidence that any fluid capable of transmitting HIV was transferred from Jimenez to any victim. Thus, according to Jimenez, the order should be stricken and the test results ordered destroyed. Jimenez is wrong.

"[S]ection 1202.1 provides in relevant part that '[n]otwithstanding Sections 120975 and 120990 of the Health and Safety Code, the court shall order every person who is convicted of ... a sexual offense listed in subdivision (e) ... to submit to a blood ... test for evidence of antibodies to the probable causative agent of acquired immune deficiency syndrome (AIDS) ....' (Pen. Code, § 1202.1, subd. (a).) Penal Code section 1202.1, subdivision (e)(6)(A)(iii), includes '[l]ewd or lascivious conduct with a child in violation of Section 288,' but with the proviso that testing shall be ordered only 'if the court finds that there is probable cause to believe that blood, semen, or any other bodily fluid capable of transmitting HIV has been transferred from the defendant to the victim: [¶] ... [¶] For purposes of this paragraph, the court shall note its finding on the court docket and minute order if one is prepared.' (Pen. Code, § 1202.1, subd. (e)(6)(A), (B).)" (*People v. Butler* (2003) 31 Cal.4th 1119, 1125.)

Here, the court could reasonably find that Jimenez transferred saliva to victim S.M. during the incidents of molestation when Jimenez put his tongue in her mouth while kissing her. Further, in *Johnetta J. v. Municipal Court* (1990) 218 Cal.App.3d 1255,

6

1279-1280 (*Johnetta J.*), the court reasoned that because saliva was theoretically capable of transmitting HIV, an order for AIDS testing was reasonably justified and did not violate the defendant's Fourth Amendment protection against unreasonable searches. There, the defendant bit a sheriff's deputy and was charged with assault. The sheriff's department sought an AIDS test of the defendant. (*Id*. at p. 1261; see Health & Saf. Code, § 121060 (formerly § 199.95) [providing for testing where, among other things, a peace officer is bitten].) In support of its request, the department submitted a doctor's report that described the bite as "'a deep puncture type bite.'" (*Johnetta J.*, *supra*, 218 Cal.App.3d at p. 1263.) The report stated, "'[t]here was no blood in the mouth of [the defendant] at the time; but certainly saliva was transferred.'" (*Ibid*.) The report further stated that the AIDS virus "'is in all bodily fluids, although in low concentrations in saliva. Theoretically, a transmission of the AIDS virus (HIV) could have occurred. No such transmission has been reported in the medical literature without blood present-but it is *theoretically* possible.'" (*Ibid.*, italics in original.)

The trial court conducted a hearing concerning whether saliva could transmit HIV and admitted expert testimony and opinion on the issue. (*Johnetta J., supra,* 218 Cal.App.3d at pp. 1263-1269.) On appeal, the court concluded, "The record below establishes that HIV can be found, albeit in small amounts, in saliva. The experts essentially agree there is a theoretical possibility of saliva transfer, and the trial court so found. Although this possibility is extremely low, the majority of the experts agreed that the possibility cannot be categorically ruled out. The record is replete with expert medical opinion, from some of the very physicians leading the fight against AIDS, that the current state of medical knowledge of AIDS is evolving, that medicine is still 'unraveling the mysteries' of the disease, and that the available evidence is insufficient to determine conclusively that HIV cannot be transferred through a bite." (*Id*. at pp. 1279-1280; see *Syring v. Tucker* (Wis. 1993) 174 Wis.2d 787 [498 N.W.2d 370] [some evidence of transmission via saliva]; *Doe v. Borough of Barrington* (D.N.J. 1990) 729

7

F.Supp. 376 [risk of such transmission extremely low or nonexistent]; but see *Brzoska v. Olson* (Del. 1995) 668 A.2d 1355 [despite presence of HIV in saliva, no transmission].)

We consider the courts discussion in *Johnetta J.* to be apropos here and find the evidence that defendant kissed one of the victims sufficient to support a finding of probable cause for the order for AIDS testing.

Jimenez contends that assuming a small amount of saliva was exchanged, there is no evidence that saliva is capable of transmitting HIV. However, there was no need for the prosecutor to present evidence showing that saliva can transmit HIV because prior case law has established that it can, albeit the possibility that it will actually infect a victim is remote.

Jimenez challenges the holding of *Johnetta J.* by citing to documents from Internet Web sites that he contends "establish that HIV cannot be transmitted by saliva or from kissing." His reliance on, and citation to, this factual material that was not presented below is improper. (See *People v. St. Martin* (1970) 1 Cal.3d 524, 537-538 ["ordinarily matters not presented to the trial court and hence not a proper part of the record on appeal will not be considered on appeal"]; Cal. Rules of Court, rule 8.204(a)(2)(C) [appellant's opening brief shall include "a summary of the significant facts limited to matters in the record"]; cf. *In re Zeth S.* (2003) 31 Cal.4th 396, 399-400 [appellate court generally may not consider postjudgment evidence outside the record on appeal to reverse dependency court's order terminating parental rights].) Accordingly, we reject Jimenez's contention that the evidence is insufficient to support the court's order requiring AIDS testing of Jimenez.

## DISPOSITION

The criminal protective order is stricken. In all other respects, the judgment is affirmed.