Filed 7/16/15  P. v. Camarena CA6
Opinion following rehearing
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | H041013 |
| Plaintiff and Respondent, | (Santa Clara County Super. Ct. No. CC621612) |
| v. | |
| FRANCISCO CAMARENA, | |
| Defendant and Appellant. | |

Defendant Francisco Camarena was convicted by plea of one count of aggravated sexual assault of a child under the age of 14 (Pen. Code, § 269) and one count of lewd and lascivious conduct on a child by force, violence, duress, menace, or fear (Pen. Code, § 288, subd. (b)(1)).  (All further statutory references are to the Penal Code.)  On appeal, he challenges two components of his sentence.

First, he argues the court violated his ex post facto rights when it imposed a $300 sex offender fine (§ 290.3), since the amount authorized by statue at the time of his offenses was only $200.  The Attorney General contends defendant forfeited this claim by failing to object below and, in any event, the amount of the fine was authorized by the applicable statute at the time of defendant's offenses.  We conclude that defendant's ex post facto challenge has not been forfeited, but we will reject the claim on the merits since the amount imposed was authorized at the time of defendant's offenses.

Second, defendant initially argued that the court's order directing him not to have any contact with the victim must be stricken because the court did not have jurisdiction to issue such an order. The Attorney General originally conceded this issue. After we filed our original opinion in this case, we granted rehearing on our own motion and asked the parties to brief the question whether the no-contact order was authorized by section 136.2, subdivision (i). In their supplemental briefs, both parties agree that (1) section 136.2, subdivision (i) authorizes a no-contact order for up to 10 years, but (2) the trial court erred when it failed to specify the duration of the no-contact order. Defendant urges us to strike the no-contact order because its duration exceeds the statutory limit.

We agree with the parties that the no-contact order was authorized by section 136.2, subdivision (i), but instead of striking the order, we will reverse the judgment with a remand to the trial court to determine the duration of the order in accordance with the time limitation and criteria set forth in the statute.

## FACTS

The statement of facts is based on evidence presented at the preliminary hearing and information from the probation report.

From 2003 until 2006, the victim in this case (a female child, hereafter "Victim") lived with her mother (Mother) in a rented room in defendant's house in San José. Initially, defendant and his wife lived in the house. Later, they moved to an apartment.

After defendant moved, he invited Victim to his apartment on several occasions to swim and play with his teenage daughter. In January 2006, when Victim was eight years old, defendant called Mother and said he wanted to take some photographs of Victim to send to his mother. When Mother asked Victim about it, Victim appeared scared and nervous and said she did not want to go to defendant's apartment. When Mother asked

2

her why, Victim said defendant had been molesting her and had touched "her intimate parts" (Mother's words). Mother reported defendant to the police that day.

San José Police Officer Carlos Melo, who is bilingual in English and Spanish, investigated this case in 2006. He interviewed Victim twice. Victim told him she had been to defendant's home several times. She said defendant took her into his bedroom, blindfolded her, had her pull down her pants and underwear, and touched her vagina with his hands. On one occasion, he touched his penis to her vagina. Victim would not use the word "penis." Instead, she used the Spanish word "cola," which the officer testified is slang for "penis." Victim told Officer Melo that defendant put his "cola" inside her vagina and also put his fingers inside her. She said it hurt when defendant touched her with his "cola."

The prosecution filed a felony complaint in February 2006, but defendant was not arrested until November 2012.

At the time of the preliminary hearing in September 2013, Victim was 16 years old. She testified that when she was around eight years old, defendant picked her up and took her to his apartment on "several" occasions. After they went swimming in the apartment pool, defendant took her into his bedroom. He told her to take off her pants and underwear, which she did because she was "scared he would do something" to her. He then covered her eyes with a blindfold and touched her private parts, meaning her vagina, with his fingers. He also put his fingers inside of her. After he was done, defendant took Victim home and told her not to tell anyone, including Mother.

At the preliminary hearing, Victim could not recall defendant touching her with his penis. She testified that to her mind, the Spanish word "cola"—which means "tail"— is used to refer to male genitalia. She did not recall telling the police that defendant had touched her with his "cola." She had reviewed her statement in the police report and acknowledged that the report indicated she had said defendant touched her with his

3

"cola." But the statement did not refresh Victim's recollection and she could not recall defendant touching her with his penis. Victim nonetheless testified that defendant touched her inappropriately more than 10 times.

When the police interviewed defendant in 2006, he "initially denied any wrongdoing; however, he later . . . admitted to touching [Victim's] vagina over and under her clothing on more than one occasion. [Defendant] expressed remorse; however, [he] denied exposing his penis to [Victim], and also denied digitally penetrating her."

## PROCEDURAL HISTORY

In February 2006, the prosecution filed a felony complaint charging defendant with two counts of aggravated sexual assault of a child under the age of 14 (§ 269). The first sexual assault count was based on the alleged rape (§ 261, subd (a)(2)) of Victim. The second sexual assault count was based on the alleged penetration of Victim with a foreign object (§ 289, subd. (a)). The prosecution also charged defendant with one count of attempting to dissuade a witness (§ 136.1, subd. (b)(1)).

Defendant was arrested in Seattle, Washington, in November 2012. In December 2012, the prosecution filed an amended felony complaint for extradition, which charged the same offenses as the original complaint. Defendant's extradition was delayed and he was released from custody; he was rearrested in March 2013 and extradited to California.

After the preliminary hearing in September 2013, the prosecution filed an information charging defendant with three counts of aggravated sexual assault of a child under the age of 14 (§ 269) and one count of attempting to dissuade a witness (§ 136.1, subd. (b)(1)). The information alleged that each of the sexual assault counts occurred on or between September 1, 2004, and December 15, 2005, at which time Victim was seven and eight years old. During that time frame, defendant was 44 to 46 years old.

4

In November 2013, the parties entered into a negotiated disposition. As part of their agreement, the prosecution filed an amended information, charging defendant with one count of aggravated sexual assault of a child under the age of 14 (§ 269) and one count of lewd and lascivious conduct on a child by force, violence, duress, menace, or fear (§ 288, subd. (b)(1)). Pursuant to the plea agreement, defendant pleaded guilty to both counts in the amended information in exchange for a sentence of 18 years to life (15 years to life on the sexual assault count plus three years on the lewd and lascivious conduct count).

In March 2014, defendant retained new counsel and his new attorney filed a motion to withdraw defendant's plea. After conducting an evidentiary hearing, the trial court denied the motion. (The order on the motion to withdraw the plea is not at issue on appeal.)

In May 2014, the court sentenced defendant to 15 years to life on the aggravated sexual assault count consecutive to the lower term of 3 years on the lewd and lascivious conduct count. The court also imposed fines and fees, including a sex offender fine (§ 290.3), and ordered defendant to register as a sex offender (§ 290, subd. (c)). As for the sex offender fine, the court found that defendant had the "ability to pay through prison wages, as well as [his] job skills, a fine of $300, plus penalty assessments, pursuant to section 290.3 . . . ." The court ordered defendant to "have no contact with the victims [*sic*] in this matter," and it issued an order "prohibiting visitation between [defendant] and the child victims [*sic*]."

## DISCUSSION

Defendant challenges the amount imposed for the sex offender fine and the court's order directing him to "have no contact with the victims [*sic*] in this matter."

5

## I. *The Trial Court Did Not Err in Imposing a $300 Sex Offender Fine*

In his challenge to the amount imposed for the sex offender fine, defendant argues that the court "violated [his] ex post facto rights when it imposed a [sex offender] fine in the amount of $300 because at the time he committed the offense, the amount was $200." (Bold and all caps omitted.) " '[T]he ex post facto clauses of the state and federal Constitutions are "aimed at laws that 'retroactively alter the definition of crimes or increase the punishment for criminal acts.' " ' [Citation.]" (*People v. Alford* (2007) 42 Cal.4th 749, 755.)

The Attorney General contends that defendant forfeited his challenge to the amount of the sex offender fine by failing to object to the fine in the trial court. On the merits, she argues the $300 imposed was authorized by the version of section 290.3 in effect when defendant committed his crimes.

### A. Legal Principles Governing the Section 290.3 Sex Offender Fine

At the time of defendant's offenses in 2004 and 2005, former section 290.3 provided in relevant part: "(a) Every person who is convicted of any offense specified in subdivision (a) of Section 290 shall, in addition to any imprisonment or fine, or both, imposed for violation of the underlying offense, be punished by a fine of two hundred dollars ($ 200) upon the first conviction or a fine of three hundred dollars ($ 300) upon the second and each subsequent conviction, unless the court determines that the defendant does not have the ability to pay the fine." (Stats. 1995, ch. 91, § 121, p. 346.) Both of defendant's offenses were subject to the fine. (Former § 290, subd. (a)(2).)

The Legislature amended section 290.3 in 2006. Among other things, the amendments increased the amount of the sex offender fine to "three hundred dollars ($300) upon the first conviction or a fine of five hundred dollars ($500) upon the second and each subsequent conviction, unless the court determines that the defendant does not

have the ability to pay the fine." (§ 290.3; Stats. 2006, ch. 337, § 18, eff. Sept. 20, 2006; *People v. Walz* (2008) 160 Cal.App.4th 1364, 1368, fn. 6.)

The Legislature has amended section 290.3 several times since it was enacted in 1988. (Stats. 1988, ch. 1134, § 1; Historical and Statutory Notes, 48 West's Ann. Pen Code (2014 ed.) foll. § 290.3, pp. 135-138.) We shall hereafter use the phrase "former section 290.3" to refer to the version of the statute in effect in 2004 and 2005 when defendant committed the offenses in this case.

Citing *People v. Valenzuela* (2009) 172 Cal.App.4th 1246 (*Valenzuela*), defendant urges us to modify the $300 sex offender fine in this case and reduce it to $200. The defendant in *Valenzuela* was convicted of one offense (lewd conduct (§ 288, subd. (a)) that was subject to the sex offender fine. (§§ 290.3, subd. (a); 290, subd. (c).) On appeal, the defendant argued that the court violated his ex post facto rights when it imposed a sex offender fine of $300 since his offense occurred in 2003 and 2004, prior to the amendment that increased the fine for a first conviction from $200 to $300. (*Id.* at p. 1248.) The *Valenzuela* court held that the prohibition against ex post facto laws applies to a section 290.3 sex offender fine. (*Valenzuela*, at p. 1248.) The court also held that "under ex post facto principles, the assessable amount of a fine is calculated as of the date of the offense." (*Id.* at p. 1248, citing *People v. Saelee* (1995) 35 Cal.App.4th 27, 30.) The court concluded that the fine imposed was an unauthorized sentence since the amount assessed was not based on the date of the defendant's offense and "modif[ied] the $300 section 290.3 . . . fine to $200, the amount statutorily authorized when [the] defendant violated section 288, subdivision (a)." (*Valenzuela*, at pp. 1248-1249.)

## B. Forfeiture

The Attorney General argues that defendant has forfeited his challenge to the section 290.3 fine by failing to object in the trial court.

As we have noted, the *Valenzuela* court held that (1) under ex post facto principles, the amount of the section 290.3 fine is calculated as of the date of the offense, and (2) a fine that violates ex post facto principles is an unauthorized sentence. (*Valenzuela*, *supra*, 172 Cal.App.4th at p. 1248.)  "The California Supreme Court has held that an unauthorized sentence may be corrected at any time even if there was no objection in the trial court."  (*Id.* at p. 1249, citing *In re Sheena K.* (2007) 40 Cal.4th 875, 886 and *People v. Smith* (2001) 24 Cal.4th 849, 854.)  "Such an unauthorized sentence may be corrected even when raised for the first time on appeal."  (*Valenzuela*, at p. 1249, citing *People v. Smith*, 24 Cal.4th at p. 854 and *People v. Scott* (1994) 9 Cal.4th 331, 354 (*Scott*).)

Quoting *Scott*, *supra*, 9 Cal.4th at page 354, the Attorney General argues that "an unauthorized sentence is one which 'could not lawfully be imposed under any circumstances in the particular case.' "  She asserts that claims " 'deemed waived on appeal involve sentences which, though otherwise permitted by law, were imposed in procedurally or factually flawed manner.' "  She contends that since the sex offender fine was lawfully imposed under the version of section 290.3 in effect at the time of defendant's offenses, to the extent it was imposed in a procedurally or factually flawed manner, it has been forfeited on appeal because defendant did not object when it was imposed.

We disagree with the Attorney General on the forfeiture issue.  Defendant has challenged the sex offender fine on ex post facto grounds.  We will follow *Valenzuela* and hold that a fine that violates ex post facto principles is an unauthorized sentence that we may review even when raised for the first time on appeal.  (*Valenzuela*, *supra*, 172 Cal.App.4th at pp. 1248-1249.)  That a defendant may not prevail on the merits of an ex post facto claim does not mean the claim has been forfeited.

8

**C. The $300 Sex Offender Fine Does Not Violate Ex Post Facto Principles**

Defendant contends the court "violated [his] ex post facto rights when it imposed a [sex offender] fine in the amount of $300 because at the time he committed the offense, the amount was $200." We disagree. Defendant was convicted of two crimes that required imposition of the sex offender fine and the statute in effect at the time of his offenses authorized a sex offender fine of up to $500 for the two convictions.

At the time of defendant's offenses, convictions for both (1) aggravated sexual assault of a child under 14 (§ 269) and (2) lewd and lascivious conduct (§ 288) required imposition of the sex offender fine. (Former § 290.3, subd. (a) (Stats. 1995, ch. 91, § 121, p. 346) & former § 290, subd. (a).) Thus, unlike the defendant in *Valenzuela*, who was convicted of only one offense that supported imposition of a section 290.3 fine, defendant was convicted of two offenses that support imposition of the fine.

Under former section 290.3, the amount of the sex offender fine was "two hundred dollars ($200) upon the first *conviction*" and "three hundred dollars ($300) upon the second and each subsequent *conviction*, unless the court determines that the defendant does not have the ability to pay the fine." (Former § 290.3, subd. (a); italics added.)

*People v. O'Neal* (2004) 122 Cal.App.4th 817 (*O'Neal*) is instructive. In that case, the defendant was convicted of two offenses that were subject to the section 290.3 sex offender fine. The trial court imposed two sex offender fines plus penalty assessments, for a total of $1,350. (*Id.* at p. 822.) On appeal, the defendant argued that the court should have imposed only one section 290.3 fine and that "multiple fines for multiple convictions in the same case are prohibited." (*O'Neal*, at p. 822.) The appellate court disagreed and held that the "statute does not limit the number of fines that may be imposed for multiple convictions in the same case." (*Ibid.*) The court explained: "the statute refers to fines for *convictions*, not fines for proceedings," and since the defendant pleaded guilty to two counts, "[e]ach count involved a separate *conviction*." (*Ibid.*; italics

9

added.)  Thus, the defendant "had a second or subsequent conviction under section 290.3."  (*Ibid.*)

Defendant here, like the defendant in *O'Neal*, had two convictions that supported imposition of the section 290.3 sex offender fine.  Under the version of section 290.3 in effect at the time of his offenses, the court was required to impose a fine of $500—$200 for his first conviction and $300 for his second conviction—unless the court determined that defendant did "not have the ability to pay the fine."  (Former § 290.3, subd. (a); *O'Neal*, *supra*, 122 Cal.App.4th at p. 822.)  The court imposed a fine of $300, which was less than the amount required by section 290.3.  But the court also made an express finding that defendant had the ability to pay a $300 fine, plus the penalty assessments attached thereto.[1]  We infer from that finding that the court concluded that defendant did not have the ability to pay the $500 fine plus penalty assessments and instead ordered him to pay $300 plus the assessments.  (*People v. Burnett* (2004) 116 Cal.App.4th 257, 261.)  Since the court's order was made within the lawful bounds of former section 290.3, there was no ex post facto violation.

## II. The Trial Court Erred in Imposing a No-Contact Order of Unlimited Duration

### A. Background

Prior to sentencing, the probation officer recommended the "Court issue an order prohibiting visitation between the defendant and the child victim(s) pursuant to Section 1202.05 . . . ."  The probation report contains a handwritten notation next to this recommendation that says:  "+ no contact."  At sentencing, the court stated:  "I'm ordering that you have no contact with the victims [*sic*] in this matter.  Also pursuant to section 1202.05, I'm issuing an order prohibiting visitation between you and the child

---

[1]  The amount of the penalty assessments is not at issue on appeal.

victims [*sic*]." The abstract of judgment says: "No contact with victim." Defendant challenges the portion of the court's order that directs him not to have any contact with the victims. As the Attorney General notes, this issue is cognizable on appeal despite defendant's failure to object to the no-contact order at sentencing since it involves the jurisdictional validity of the no-contact order and a claim that it was not authorized by statute. (*People v. Robertson* (2012) 208 Cal.App.4th 965, 995-996 (*Robertson*), citing *People v. Ponce* (2009) 173 Cal.App.4th 378, 381-382 (*Ponce*).)

## B. Contentions and Analysis

First, acknowledging that "the court may have simply misspoken," defendant challenges the court's order to stay away from the "victims," arguing that there was only one victim. Based on the wording of the probation report—its use of the phrase "child victim(s)," which it appears the court relied on in pronouncing sentence—we agree that the court misspoke when it used the plural term to refer to Victim.

Second, in his original briefs, defendant urged us to strike the no-contact order. He argued that the court was without jurisdiction to make the order. He contended that "[w]hen a court has sentenced a defendant to prison, it is without jurisdiction to order probationary terms to be followed." He also argued that while the court can order no visitation pursuant to section 1202.05, "it cannot order the further term that [defendant] have no contact with the victim."

In response, the Attorney General agreed that the no-contact order should be stricken because it was not authorized by section 1202.05, which only prohibits visitation. Neither party briefed the applicability of section 136.2.

After we filed our original opinion, we granted rehearing on our own motion and asked the parties to brief the following questions: (1) Does section 136.2, subdivision (i)

11

provide statutory authority for the no-contact order?  (2) If so, does the no-contact order in this case comply with the requirements of section 136.2, subdivision (i)?

In their supplemental briefs, both parties argue that section 136.2 authorizes a no-contact order for up to 10 years, but the court erred when it failed to specify the duration of the order.  We agree.

Several statutes permit entry of protective orders in criminal cases.  "For example, section 136.2, subdivision (a) authorizes issuance of a protective order during the duration of criminal proceedings."  (*Robertson*, *supra*, 208 Cal.App.4th at p. 996; *Ponce*, *supra*, 173 Cal.App.4th at pp. 382-383; § 136.2, subd. (i).)  "Section 1203.1, subdivision (i)(2), which authorizes a no-contact order in some sex offense cases, only applies where the defendant is granted probation.  Section 1201.3, subdivision (a) authorizes a no-contact order for a period of up to 10 years but only when the defendant was convicted of a sexual offense involving a minor victim" and defense counsel has received a notice of intent to request or impose such an order.  (*Robertson*, *supra*, 208 Cal.App.4th at p. 996; § 1201.3, subds. (a), (c).)  In *Robertson*, the court ultimately struck the no-contact order in that case on the grounds that it was not authorized by any statute.  (*Robertson*, *supra*, 208 Cal.App.4th at pp. 996-997.)

Unlike *Robertson*, we find statutory authority for the no-contact order imposed in this case.  As the Third District Court of Appeal recently observed in *People v. Therman* (2015) 236 Cal.App.4th 1276 (*Therman*), "[s]ection 136.2 primarily authorizes trial courts to issue *prejudgment* restraining orders to protect victims and witnesses during the pendency of the criminal action in which they are issued.  [Citations.]  [¶]  Effective January 1, 2012, however, a new subdivision, subdivision (i), was added to section 136.2 . . . [requiring] trial courts to consider the issuance of *postjudgment* protective orders" in specified cases.  (*Therman*, at pp. 1278-1279, original italics; see also Stats. 2011, ch. 155, § 1, p. 2222.)

12

Subdivision (i)(1) of section 136.2 provides: "[i]n all cases in which a criminal defendant has been convicted of a crime of domestic violence as defined in Section 13700, a violation of Section 261, 261.5, or 262, *or any crime that requires the defendant to register pursuant to subdivision (c) of Section 290*, the court, at the time of sentencing, shall consider issuing an order restraining the defendant from any contact with the victim. The order may be valid for up to 10 years, as determined by the court. This protective order may be issued by the court regardless of whether the defendant is sentenced to the state prison or a county jail, or whether imposition of sentence is suspended and the defendant is placed on probation. It is the intent of the Legislature in enacting this subdivision that the duration of any restraining order issued by the court be based upon the seriousness of the facts before the court, the probability of future violations, and the safety of the victim and his or her immediate family." (Italics added.)

Defendant was convicted of aggravated sexual assault of a child (§ 269) and lewd and lascivious conduct on a child by force, violence, duress, menace, or fear (§ 288, subd. (b)(1)). Both convictions require him to register as a sex offender pursuant to section 290, subdivision (c); therefore, the no-contact order was authorized by section 136.2, subdivision (i). But the court did not specify the duration of the no-contact order. Since the trial court determined that a no-contact order was appropriate in the circumstances of this case, we will remand to the trial court for the limited purpose of determining the duration of the order in accordance with the criteria in section 136.2, subdivision (i)(1).

## DISPOSITION

The judgment is reversed. The case is remanded to the trial court for the limited purpose of determining the duration of the no-contact order in accordance with the criteria in section 136.2, subdivision (i)(1).

13

_____

Márquez, J.

WE CONCUR:

_____

Rushing, P. J.

_____

Grover, J.