Filed 10/22/15  P. v. Leary CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>　　　　Plaintiff and Respondent,<br><br>v.<br><br>DYLAN ROBERT LEARY,<br><br>　　　　Defendant and Appellant. | A143726<br><br>(Napa County<br>Super. Ct. No. CR170915) |

Defendant Dylan Robert Leary was sentenced to serve four years four months in state prison after pleading no contest to arson and burglary charges.  His sole claim on appeal is that an order directing him to stay away from the victims and their property constitutes an unauthorized sentence and must be reversed.  We shall strike the challenged order but otherwise affirm the judgment.

**FACTUAL AND PROCEDURAL BACKGROUND**

In May 2014, Cal Fire personnel responded to a fire early in the morning at a vacation property in Napa owned by Matthew and Karla Davis.[1]  The main residence on the property was destroyed in the fire.  An arson investigator believed the fire was deliberately set.  Mr. Davis reported that various items had been taken from the property, including two televisions sets, a mountain bike, and tools belonging to a contractor.  After the fire had been extinguished, Mrs. Davis called 911 in the afternoon to report

---

[1]Because the conviction resulted from a plea, the factual background is derived from the probation report.

three suspicious persons on the property. One of the suspicious persons was defendant, who was holding a sword when he came out from behind a guest house on the property. Defendant and the other two individuals left in a vehicle after being confronted. Mrs. Davis reported the vehicle's license plate to the police dispatcher. A sheriff's deputy contacted the vehicle's owner, who claimed he had gone to the Davis property after defendant called him and asked for a ride home. The day after the fire, detectives conducted a probation search of defendant's home, where they found various items that matched the description of property taken from the Davis's vacation home.

In an interview with the detectives, defendant admitted that he had burglarized the Davis property with two other individuals, Joseph Dewitt and Jessica Jaeger. Defendant stated that he had gone to the Davis property on three separate occasions, including one time after the fire. According to defendant, he returned to the property after the burglary because he read that the house had burned to the ground and wanted to see it. He claimed he had nothing to do with the fire. Jaeger reported that she heard an alarm sounding as the burglars left the Davis property. Dewitt told her he lit a hallway closet on fire as they were leaving in order to get rid of any fingerprints.

The Napa County District Attorney filed a five-count criminal complaint charging defendant with arson of an inhabited structure (Pen. Code,[2] § 451, subd. (b)), three counts of first degree residential burglary (§ 459), and conspiracy to commit arson and burglary (§ 182, subd. (a)(1)). Defendant pleaded no contest to the arson count and to one of the burglary counts. In exchange for the plea, the prosecutor agreed to dismiss the remaining charges. Pursuant to the plea, the court sentenced defendant to serve four years four months in state prison, composed of the low term of three years for arson plus a consecutive term of one year four months, representing one-third of the four-year middle term for burglary.

At the sentencing hearing, Mrs. Davis spoke about her fear after the arson and burglary of her home and the need to take measures to make sure defendant and his

---

[2]All further statutory references are to the Penal Code.

companions would not break into her house again. Mr. Davis spoke of the implicit threat posed by defendant's act of bringing a Samurai sword onto their vacation property. A neighbor of Mr. and Mrs. Davis urged the court to restrict defendant and his confederates from coming near the area where the burglary and arson occurred. As part of defendant's sentence, and presumably in response to the concerns voiced at the sentencing hearing, the court issued a no-contact order directing defendant to stay away from the victims and at least 100 yards away from the Davis property. The abstract of judgment provides: "The Defendant shall have no contact with the victims, directly or indirectly and stay 100 yards away from their property." Neither the oral record of the sentencing hearing nor the court's minutes provides any statutory basis for the no-contact order.

## DISCUSSION

Defendant's sole claim of error on appeal is that the no-contact order is an unauthorized sentence and must be reversed. The People concede that the order is unauthorized and must be stricken. The concession is well taken.

At the outset, we note that this issue is cognizable despite defendant's failure to object to the no-contact order during the sentencing hearing. A claim that a sentence is unauthorized may be raised for the first time on appeal. (*People v. Ponce* (2009) 173 Cal.App.4th 378, 381–382 (*Ponce*).)

In *People v. Robertson* (2012) 208 Cal.App.4th 965, 995–996 (*Robertson*), the court held that a no-contact order imposed on a defendant who was sentenced to prison was unauthorized under the circumstances presented in that case. The Court of Appeal gave examples of permissible protective orders in criminal cases: "For example, section 136.2, subdivision (a) authorizes issuance of a protective order during the duration of criminal proceedings. Yet, this statute does not authorize issuance of a protective order against a defendant who has been sentenced to prison unless the defendant has been convicted of domestic violence. [Citation.] Section 1203.1, subdivision (i)(2), which authorizes a no-contact order in some sex offense cases, only applies where the defendant is granted probation. Section 1201.3, subdivision (a) authorizes a no-contact order for a period of up to 10 years but only when the defendant was convicted of a sexual offense

3

involving a minor victim." (*Id.* at p. 996.) The court concluded that the no-contact order was not authorized under any of the several statutes that permit entry of protective orders in a criminal case. It also stated it was "not aware of any statute that would provide a basis for the trial court to issue a no-contact order in this case during sentencing, much less one of unlimited duration." (*Ibid.*)

Even though a court may have inherent power to act in the absence of specific authorizing legislation, this authority does not allow a court to issue protective "orders against defendants by fiat or without any valid showing to justify the need for the order." (*Ponce, supra,* 173 Cal.App.4th at p. 384.) Further, "[w]here the Legislature authorizes a specific variety of available procedures, the courts should use them and should normally refrain from exercising their inherent powers to invent alternatives." (*Ibid.*) In *Robertson, supra,* 208 Cal.App.4th at page 996, the Court of Appeal concluded that the trial court's inherent powers did not justify a protective order preventing the defendant from having contact with the victim after the defendant was sentenced to prison and there was no evidence the defendant had threatened a witness. Likewise, in *Ponce, supra,* 173 Cal.App.4th at page 385, the court did not have authority to issue a no-contact order in the absence of evidence that the defendant had actually harassed or contacted the victim during his period of incarceration. "[A] prosecutor's wish to have such an order, without more, is not an adequate showing sufficient to justify the trial court's action." (*Id.* at pp. 384–385.)

Here, the court denied probation and sentenced defendant to prison. There was no statutory authority to issue the no-contact order. Further, although the victims and their neighbors understandably did not want to have any further contact with defendant or his companions, there was no evidence to suggest defendant would pose an ongoing threat to either the victims or their neighborhood after he is ultimately released from prison. Even though a court may have inherent authority to issue restraining orders when warranted by the circumstances, there was no support in the case for a protective order of unlimited duration. Accordingly, we agree with the parties that the no-contact order must be stricken.

4

## DISPOSITION

The order directing defendant to have no contact with the victims and to stay away from their property is stricken. The trial court is directed to prepare an amended abstract of judgment in accordance with this disposition and deliver it to the Department of Corrections and Rehabilitation. In all other respects, the judgment is affirmed.

_____

McGuiness, P.J.

We concur:


_____

Siggins, J.


_____

Jenkins, J.


A143726