# United States Court of Appeals
## For the First Circuit

No. 11-2371

UNITED STATES,

Appellee,

v.

MARK STEPHEN PALMQUIST,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MAINE

[Hon. John A. Woodcock, Jr., U.S. District Judge]

Before

Lynch, Chief Judge,
Boudin,[*] Circuit Judge,
and Woodlock,[**] District Judge.

George T. Dilworth, with whom Drummond Woodsum was on brief for appellant.
Margaret D. McGaughey, Assistant United States Attorney, with whom Thomas E. Delahanty II, United States Attorney, was on brief for appellee.

April 11, 2013

---

[*] Judge Boudin heard oral argument in this matter and participated in the semble, but he did not participate in the issuance of the panel's opinion in this case. The remaining two panelists therefore issued the opinion pursuant to 28 U.S.C. § 46(d).

[**] Of the District of Massachusetts, sitting by designation.

**WOODLOCK, District Judge**. Mark Palmquist is a Marine Corps veteran who worked as a civilian employee with the U.S. Department of Veterans Affairs from 2004 to 2010. He was convicted of fraud in connection with his own receipt of veterans benefits.

Adverting to Garrity v. New Jersey, 385 U.S. 493 (1967), Palmquist challenges his conviction on grounds that statements he made during an interview with a Veterans Administration investigator were coerced because they were induced by putting him to a choice between loss of his job or surrender of his right to remain silent under the Fifth Amendment and consequently should have been suppressed. Adverting to commentary accompanying the sentencing guideline applicable to his offense, he challenges his sentence on grounds that the restitution ordered should have been offset by other benefits he might have claimed from the Veterans Administration. Finding no support for either the claim of coercion or that of entitlement to benefits which could be used as an offset to the restitutionary obligation, we decline to disturb either the conviction or the sentence.

## I.

On October 14, 2008, Palmquist filed a claim with the Veterans Administration for increased service-related disability benefits based on a back injury. He had filed six prior claims for back injury, all of which were denied because he could not establish that the injury was service-related. To support his October 2008

application, which was granted, Palmquist supplied a government memorandum purporting to establish that he sustained his injury in connection with military service in Panama in 1988. The memo, however, was a forgery, and no other evidence supported Palmquist's claim. Before the Veterans Administration uncovered the fraud, Palmquist received $37,440 in disability benefits to which he was not entitled.

Palmquist's efforts to defraud the Veterans Administration, as charged in the indictment, began long before 2008. Previously, Palmquist had received service-related benefits in an amount contingent upon his claimed number of dependents. Palmquist claimed as dependents Aurora Ra Williams-Enstrom, whom he married in 2002, and her minor daughter. Palmquist, however, never notified the Veterans Administration that he divorced Williams-Enstrom in 2003. As a result, Palmquist received $9,789 in dependency benefits to which he was not entitled.

Palmquist was charged in a 27-count indictment with a variety of offenses involving misconduct in his receipt of benefits from the Veterans Administration.[1] Pursuant to a plea bargain reserving the right to appeal the denial of his motion to suppress the statements he made to the Veterans Administration investigator, he pled guilty to two counts: knowingly submitting a false claim for

---

[1] One count, not at issue here, also charged Palmquist with making a false statement in an application for employment with the Veterans Administration.

Veterans Administration service-related benefits in violation of 18 U.S.C. § 287, and theft of Veterans Administration service-related benefits exceeding $1,000 in violation of 18 U.S.C. § 641. The district court sentenced Palmquist to 18 months of imprisonment, 3 years of supervised release, $47,228 in restitution, and $200 in special assessments.

## II.

Palmquist challenges the district court's refusal to suppress statements he made to Timothy Bond, a criminal investigator for the Veterans Administration Office of the Inspector General. The statements may be taken to indicate that his use of the forged memorandum was knowing and willful.[2] In addressing Palmquist's suppression claim, we rely upon the facts as supportably found by the magistrate judge and adopted by the district judge.

On April 3, 2009, Bond interviewed Palmquist in Palmquist's office at the Togus Veterans Administration Hospital. Veterans Administration police officer Jeffrey Turner was also present for

_____

[2] The government, for its part, seeks in its briefing to minimize the evidentiary importance of the statements Palmquist made to Bond. According to the government's version of the facts in support of the guilty plea, Bond would have testified only to Palmquist's admissions about his knowledge of Veterans Administration claims procedures, which would show that his conduct was knowing and willful. Presumably, the government means to imply that it could have made such a showing even without the statements at issue, based on Palmquist's rather extensive history of filing claims with the Veterans Administration, not to mention that his use of the forged memorandum was a fairly obvious act of deception. In any event, because we conclude that the statements did not need to be suppressed, we express no opinion regarding their evidentiary significance.

-4-

the interview.  In keeping with Veterans Administration policy, Bond did not record the interview, but he did take notes.

Bond introduced himself to Palmquist as a member of the Office of the Inspector General's criminal investigation division, which he confirmed by showing Palmquist his badge.  Bond explained that he had received allegations of fraud, specifically concerning Palmquist's dependency benefits.  He also explained that the interview was voluntary, and that Palmquist could not be punished for refusing to answer questions.  Before asking any questions, Bond presented Palmquist with a form that read:

**ADVISEMENT OF RIGHTS**
**(FEDERAL EMPLOYEES – GARRITY)**

You are being contacted to solicit your cooperation in an official investigation regarding misconduct or improper performance of official duties.  In accordance with the Privacy Act, you are advised that the authority to conduct this investigation is contained in the Inspector General Act of 1978, 5 U.S.C. App. 3.

The matter under investigation could constitute a violation of law that could result in the criminal prosecution of the responsible individuals.

This inquiry concerns _____

You have the right to remain silent if your answers may tend to incriminate you.  If you do decide to answer questions or make a statement, you may stop answering at any time.

Anything you say may be used as evidence in both an administrative proceeding or any future criminal proceeding involving you.

If you refuse to answer the questions posed to you on the grounds that the answers may tend to incriminate you, you cannot be removed (fired) solely for remaining silent; however, your silence can be considered in an

-5-

administrative proceeding for any evidentiary value that is warranted by the facts surrounding your case.

### ACKNOWLEGEMENT

I understand the warnings and assurances stated above and I am willing to make a statement and answer questions voluntarily.  No promises or threats have been made to me and no pressure or coercion of any kind has been used against me.

In the blank space following "This inquiry concerns," Bond wrote "VA compens[at]ion benefits for Mark Palmquist."  The form was signed by Palmquist and by Turner, as a witness.

After summarizing the form for Palmquist, Bond gave Palmquist an opportunity to review the form and to ask questions.  Palmquist looked only briefly at the form, but did not indicate any confusion about Bond's summary.  Bond concluded that Palmquist was satisfied with his explanation, and observed that Palmquist showed no reluctance in signing the form.

During the interview, Palmquist seemed calm and cooperative. Early in the interview, Palmquist briefly discussed his medical problems--in addition to his back injury, Palmquist was being treated for PTSD--and asked a question about a civil employment discrimination suit he had pending against the Veterans Administration.[3]  Bond again reminded Palmquist that he was involved in a criminal investigation, but asked if Palmquist wanted

---

[3] The discrimination action has since been determined adversely to Palmquist. Palmquist v. Shinseki, 689 F.3d 66 (1st Cir. 2012), petition for cert. filed (U.S. Dec. 26, 2012) (No. 12-789).

-6-

his civil counsel present. Palmquist declined and agreed to continue the interview, which turned to the issue of benefits fraud. The entire interview lasted about 20 minutes, and ended cordially.

The district court, adopting a magistrate judge's recommendation, found that the statements Palmquist made to Bond were voluntary and accordingly denied Palmquist's motion to suppress. We will uphold such a denial unless there is no reasonable view of the evidence to support the determination. United States v. Jadlowe, 628 F.3d 1, 13 (1st Cir. 2010), cert. denied, 131 S. Ct. 1833 (2011). We review the lower court's findings of fact for clear error, and its legal determinations de novo. United States v. Hughes, 640 F.3d 428, 434 (1st Cir. 2011).

In Garrity v. New Jersey, 385 U.S. 493 (1967), the Supreme Court prevented government entities from "us[ing] the threat of discharge to secure incriminatory evidence against an employee." Id. at 499. When an employee faces the choice "between self-incrimination and job forfeiture," the Court ruled, his statements are deemed categorically coerced, involuntary, and inadmissible in subsequent criminal proceedings. Id. at 496-97.

Not every possible threat of adverse employment action, however, triggers immunity under Garrity. As we have observed:

> In all of the cases flowing from Garrity, there are two common features: (1) the person being investigated is explicitly told that failure to waive his constitutional right against self-incrimination will result in his discharge from public employment (or a similarly severe

-7-

> sanction imposed in the case of private citizens); and
> (2) there is a statute or municipal ordinance mandating
> such procedure.

United States v. Indorato, 628 F.2d 711, 716 (1st Cir. 1980).

Garrity immunity is contingent upon the degree of certainty that an employee's silence alone will subject the employee to severe employment sanctions. So, for example, potentially unfavorable inferences drawn from an employee's silence, which serve as one factor in adverse employment action against him, have been found "too conditional" a threat to trigger Garrity immunity. United States v. Stein, 233 F.3d 6, 14 (1st Cir. 2000); see also id. at 16 (distinguishing "the threat of automatic loss of one's livelihood and the threat of an inference that might lead to such a loss").

Nothing that Bond said or presented to Palmquist could have led Palmquist to believe that, if he remained silent, he would automatically lose his job or suffer similarly severe employment consequences solely for having remained silent. The magistrate judge credited Bond's testimony that he accurately summarized the Advisement of Rights. The Advisement, in turn, informed Palmquist that he could not be fired solely for refusing to participate in the interview, although his silence could be used as evidence in an administrative proceeding. Under Stein, the consequences of such a use of Palmquist's silence are too conditional to be deemed coercive.

Whatever Palmquist may have read or been told at the time, he

argues he was also subject to coercion under the Veterans Administration Standards of Conduct, which provide:

> Employees will furnish information and testify freely and honestly in cases respecting employment and disciplinary matters. Refusal to testify, concealment of material facts, or willfully inaccurate testimony in connection with an investigation or hearing may be ground for disciplinary action. An employee, however, will not be required to give testimony against himself or herself in any matter in which there is indication that he or she may be or is involved in a violation of law wherein there is a possibility of self-incrimination.

38 C.F.R. § 0.735-12(b). This regulation is not inherently coercive, given that, read in full, it effectively precludes automatic disciplinary action for an employee's refusal to testify "in any matter in which there is indication that he or she may be or is involved in a violation of law wherein there is a possibility of self-incrimination." In such a case the employee "will not be required to give testimony." The regulation thus makes exactly the exception necessary to prevent the attachment of immunity under Garrity.

Our opinion in Sher v. U.S. Department of Veterans Affairs, 488 F.3d 489 (1st Cir. 2007), is not to the contrary. Sher did not create a blanket rule that employees subject to 38 C.F.R. § 0.735-12(b) are entitled to immunity under Garrity. In Sher, the employee received letters from the Veterans Administration reporting that criminal prosecution had been declined by the U.S. Attorney and advising that "'[e]mployees will furnish information and testify freely and honestly in cases respecting employment and

disciplinary matters. Refusal to testify . . . in connection with an investigation or hearing may be ground for disciplinary action.'" Id. at 502. The letters, however, did not quote the portion of § 0.735-12(b) indicating that an employee is not required to give testimony where there is a possibility of self-incrimination. Tellingly, then, the court said only that the "notification"--i.e., the content of the letters and not the regulation itself--"was a threat of removal sufficient to constitute coercion under Garrity." Id. (emphasis added).

Moreover, the central question in Sher was not whether the employee faced coercion sufficient to immunize his statements from use in criminal prosecution under Garrity. Rather, Sher involved what the court took to be obviously coercive letters to the employee, upon which Garrity immunity automatically attached, and addressed whether the employee received sufficient notice of his Garrity immunity to justify using his silence in an administrative failure-to-cooperate charge. The court in Sher thus had no occasion to determine whether any employee obligated to cooperate under 38 C.F.R. § 0.735-12(b) would be under such coercion that Garrity would render his statements inadmissible in criminal prosecution.

In any event, this case is distinguishable from Sher in several other respects. Here, there is no indication Palmquist was aware of the regulation at all, let alone that he was selectively presented with the coercive portion of the regulation that would

-10-

imply he "faced the loss of his job for refusal to testify." Sher, 488 F.3d at 502. Moreover, Bond made clear that he was investigating a criminal matter regarding benefits fraud, rather than an "employment and disciplinary matter," which would trigger application of the regulation.

Palmquist also argues that Bond and, alternatively, the Advisement of Rights misstated the law, thus rendering Palmquist's testimony involuntary. Bond's alleged misstatement was that Palmquist could not be punished for not answering questions. According to Palmquist, this misstated the extent to which his silence could be used against him in administrative proceedings. Bond was plainly referring to Palmquist's immunity from criminal punishment based on his silence; the statement is thus not inconsistent with Bond's later provision of an accurate summary of the Advisement of Rights, which discusses the potential evidentiary uses of silence. This alleged inconsistency, if inconsistency it was, does not give rise to any clear error such that we must reject the district court's determination that Bond summarized the Advisement of Rights form accurately.[4]

---

[4] Moreover, any failure to inform Palmquist of adverse employment consequences that could flow from his silence only diminishes the likelihood that his statements were coerced by the threat of adverse employment consequences. Cf. Dwan v. City of Boston, 329 F.3d 275, 279 (1st Cir. 2003) ("[C]oercion is lacking so long as the employee was never threatened or forewarned of any sanction for refusing to testify." (emphasis in original)).

-11-

Palmquist also complains that the warnings in the Advisement of Rights are inconsistent with model warnings provided by Department of Justice in its so-called "Wray Memorandum." Unlike the OIG Advisement of Rights, the Garrity warning suggested by the Wray Memorandum does not mention that an employee's silence may be used as evidence in an administrative or disciplinary proceeding. Putting aside that nothing requires the Veterans Administration to use the Department of Justice form, we have already observed that potential use of Palmquist's silence as evidence for what it is worth is too conditional to constitute coercion. Stein, 233 F.3d at 14, 16.

Palmquist makes no argument that his statements should have been suppressed on more conventional voluntariness grounds, and the record provides no such indication of coercion in any event. The interview was, by all accounts, calm and cordial. Having supportably determined that Palmquist's statements were not immunized under Garrity, the district court properly denied the motion to suppress.

**III.**

Palmquist's challenge to the court's restitutionary order turns on his alleged entitlement to an offset for benefits he never received from the Veterans Administration. From March 2006 until their divorce in October 2007, Palmquist was married to Tammy Swank. As a consequence, he could have claimed her as a dependent. If such a claim had been made and awarded, the $9,789.00 in improper

benefits received for his previous wife Williams-Enstrom and her child, and awarded as restitution to the Veterans Administration, would theoretically have been reduced by $1,791.00.  But he made no timely administrative claim for the Swank benefits and chose only to assert entitlement during the sentencing proceedings.

His challenge involves a shameless sleight of hand.  First, Palmquist asks that his failure to apply for the benefit in a timely fashion and the bar consequence under Veterans Administration regulations be ignored.  But procedural rules are applicable to all claimants.  Palmquist needed to submit updated evidence of his marital status within one year of his marriage to Swank in order for his increased benefits to run from that dependency status event. See 38 C.F.R. § 3.660(c); see also id. §§ 3.401, 3.213.[5]  Palmquist in his reply brief "concedes that he did not fill out all the paperwork for [the Swank] benefits"[6] and thus failed to meet these procedural requirements.  Like any other claimant who failed to make

_____

[5] It appears that the testimony during the sentencing hearing that Palmquist had two years from the dependency event to apply for benefits was inaccurate.  Moreover, it appears there is only a time limit on making benefits retroactive to the dependency event; there is no time limit on applying for prospective benefits.  These refinements are of no assistance to Palmquist, because he did not apply for benefits at any point during his marriage to Swank.

[6] He contends, however, that he gave the Veterans Administration notice of his marriage to Ms. Swank when he filed for medical benefits for her.  But that notice, apart from not claiming dependency benefits, was provided to a different Veterans Administration division, which someone like Palmquist, with a sophisticated understanding of Veterans Administration procedures, would know to be unlikely to make the connection to a claim for dependency benefits.

-13-

a timely claim, Palmquist thus had no entitlement to any Swank benefit.

Second, Palmquist seeks to avoid his procedural obligations by invoking Comment 3(F)(ii) to USSG § 2B1.1, the sentencing guideline governing the loss incurred by the Veterans Administration and the restitution required to make the Veterans Administration whole. The Comment provides:

> *Government Benefits. – In a case involving government benefits (e.g., grants, loans, entitlement program payments), loss shall be considered to be not less than the value of benefits obtained by unintended recipients or diverted to unintended uses, as the case may be. For example, if the defendant was the intended recipient of food stamps having a value of $100 but fraudulently received food stamps having a value of $150, loss is $50.*

But the underlying, if not explicitly stated, assumption in the comment is that an "intended recipient" is one who has an entitlement to $100 in food stamps. Having failed timely to make a claim, Palmquist, like any other untimely claimant, lost any legal entitlement he might have had.[7] The reason for his failure to make the Swank claim is obvious: it would have disclosed that he no longer had any entitlement to the more valuable Williams-Enstrom benefit, and hadn't for some time, since he was divorced from

---

[7] Such an independent procedural bar to mitigating benefit amounts distinguishes this case from those, cited to us by Palmquist, in which courts measured loss as the difference between the amount of benefits actually received and the amount defendant would have received absent untruthful reporting in the benefits claim itself. See United States v. Tupone, 442 F.3d 145, 153-54 (3d Cir. 2006); United States v. Dawkins, 202 F.3d 711, 714 (4th Cir. 2000).

Williams-Enstrom in 2003.  His scheme depended on concealment of the fact that he was no longer entitled to Williams-Enstrom benefits, a disclosure that would necessarily follow from a claim for Swank benefits.

There is no reason why Palmquist should get some special indulgence, unavailable to other dilatory benefit claimants, providing him with a means to minimize his restitutionary obligations for criminal fraud.  His claim for an offset is the financial equivalent of the plea of the parricide who seeks consideration from the court by pointing out that he is an orphan, seeking to avoid confronting the unhappy fact that this is a condition of his own contrivance.

**Affirmed**.