Filed 8/20/25  P. v. Silverado Senior Living Management CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>SILVERADO SENIOR LIVING MANAGEMENT, INC., et al.,<br><br>Defendants and Respondents. | B334247<br><br>(Los Angeles County Super. Ct. No. BA512525) |

APPEAL from an order of the Superior Court of Los Angeles County, Kerry L. White, Judge.  Affirmed.

George Gascón and Nathan J. Hochman, District Attorneys, Cassandra Thorp, Matthew Brown and Grace Shin, Deputy District Attorneys, for Plaintiff and Appellant.

Holmes, Athey, Cowan & Mermelstein, Mona Amer and Mark Mermelstein for Defendants and Respondents Silverado Senior Living Management, Inc.; Silverado Senior Living Holdings, Inc.; and Loren Bernard Shook.

Gibson, Dunn & Crutcher, Michael Farhang, Daniel R. Adler, Matt Aidan Getz; Byrne & Nixon and Daniel V. Nixon for Defendant and Respondent Subtenant 330 North Hayworth Avenue, LLC.

Bird Marella et al., Thomas R. Freeman and Benjamin N. Gluck for Defendant and Respondent Kimberly Cheryl Butrum.

Murphy, Pearson, Bradley & Feeney, Philip J. Kearney, Jr., and Christopher Ulrich for Defendant and Respondent Jason Russo.

Hanson Bridgett and Jillian Somers Donovan for California Assisted Living Association, American Seniors Housing Association and Argentum as Amicus Curiae on behalf of Defendants and Respondents.

\* \* \* \* \* \*

The issue in this criminal appeal is whether statements made by the administrator of a residential care facility for the elderly (RCFE) to State regulators investigating resident deaths during a March 2020 COVID-19 outbreak are protected under the Fifth Amendment. The trial court found the administrator's statements were compelled and that the Fifth Amendment precluded their use in subsequent criminal proceedings. The trial court further found the prosecution failed to prove that its case relied on evidence wholly independent of the compelled testimony and dismissed the action against all defendants. We affirm the trial court's evidentiary ruling and dismissal order.

## BACKGROUND

Plaintiff and appellant District Attorney of Los Angeles County (plaintiff) filed a 28-count information in March 2023 charging defendants and respondents Silverado Senior Living Management, Inc.; Silverado Senior Living Holdings, Inc.; Subtenant 330 North Hayworth Ave, LLC; Loren Bernard Shook; Jason Michael Russo; and Kimberly Cheryl Butrum (collectively, defendants)[1] with elder abuse in violation of Penal Code section 368, subdivision (b)(1) and violation of Labor Code section 6425. The charges were premised on defendants' admission of a new resident at Silverado Beverly Place (Beverly Place) in March 2020 and a subsequent Covid-19 outbreak at the facility that resulted in the deaths of 13 residents and one nurse.

The California Department of Social Services (DSS), the agency with primary responsibility for licensing and regulating RCFE's, investigated the COVID-related deaths at Beverly Place. At the conclusion of its investigation, DSS cleared defendants of any wrongdoing.

The California Division of Occupational Safety and Health (CalOSHA) conducted a separate investigation. CalOSHA subpoenaed materials from Beverly Place and DSS, including

---

[1] Silverado Senior Management Living, Inc., operates Silverado Beverly Place, an RCFE. Silverado Senior Living Holdings, Inc., provides back-office support to Beverly Place. Loren Shook is CEO of Silverado Senior Management Living and Silverado Senior Living Holdings. Kimberly Cheryl Butrum is the senior vice president of clinical services for Silverado Senior Living Holdings. In 2020, Subtenant 330 North Hayworth Ave, a limited liability company with no employees, was a nonoperating colicensee of Beverly Place. Jason Michael Russo was Beverly Place's administrator in 2020.

3

DSS reports of its interviews with defendant Russo, Beverly Place's administrator. At the conclusion of its investigation, CalOSHA referred the matter to the district attorney's office, and this criminal action ensued.

**Motion to exclude compelled statements**

Defendants moved to exclude compelled statements by Russo and other Silverado employees from use at the preliminary hearing. Defendants argued Russo's statements to DSS were compelled because he was statutorily required to answer DSS's questions to retain his certification and employment, and the Fifth Amendment precluded use of the compelled statements in a criminal proceeding. Defendants further argued that coerced testimony was inherently unreliable and use of Russo's compelled statements against his codefendants would violate their due process right to a fair hearing. Plaintiff opposed the motion, arguing Russo's statements were not compelled.

At the hearing on the motion to suppress, the parties offered documentary evidence and witness testimony. Joel Goldman, an attorney who has advised RCFE's on regulatory and operational matters for approximately 30 years, testified as an expert witness for the defense. Goldman reviewed the statutory and regulatory framework governing RCFE's. He testified the applicable statutes (Health and Safety Code sections 1569.50 and 1569.58) and regulations (title 22, division 6, chapter 8 of the California Code of Regulations (Title 22)) require RCFEs to have a certified administrator to administer the facility in accordance with statutory and regulatory requirements and to cooperate with DSS investigations.

Goldman testified DSS is statutorily authorized to investigate incidents at an RCFE and to interview residents and

4

staff. Goldman further testified that Title 22, section 87755, subdivision (b) compels RCFE administrators to make themselves available for DSS interviews and that failure to do so would be "career suicide." Goldman explained that DSS is empowered to revoke an administrator's certification and/or an RCFE's license for failure to comply with the applicable regulatory requirements, including submitting to a DSS interview. Goldman testified DSS is also authorized to exclude from an RCFE any person who violates or aids or abets a violation of the applicable statutory provisions.

Defendant Russo testified to obtain his certification as an RCFE administrator he underwent 40 hours of training on Title 22 to obtain his initial certification and an additional 200 hours of Title 22 training to renew his certification during the succeeding five years. Russo understood Title 22 requires RCFE administrators to cooperate with DSS during complaint investigations, including submitting to interviews with DSS personnel.

Russo was the administrator of Beverly Place at the times relevant to this action. He testified on March 21, 2020, a Beverly Place resident who had been admitted two days previously tested positive for COVID-19. Russo immediately notified DSS. During DSS's ensuing investigation, DSS personnel interviewed Russo eight times between April 2020 and August 2021. In addition to the eight formal interviews, Russo communicated with DSS staff on a daily basis by telephone or e-mail.

Russo testified under Title 22, he was compelled to answer DSS's questions. Russo further testified he was familiar with the relevant statutes that penalize failure to cooperate with DSS, specifically Title 22, section 87405, subdivision (c), which

5

authorizes DSS to revoke a facility's license.  Russo testified that revocation of Beverly Place's license would effectively terminate his employment.  He acknowledged that refusal to speak to DSS personnel would have been "career suicide" as it would have permanently harmed his employment prospects.

After hearing argument from the parties, the trial court found Russo subjectively believed his statements to DSS were compelled and Russo's belief was objectively reasonable under the circumstances.  The court then allowed plaintiff the opportunity to show the case could proceed on evidence wholly independent of the compelled statements.

CalOSHA investigator Brian Baudendistel testified for the prosecution.  Baudendistel was assigned to investigate Beverly Place in April 2020.  As part of that investigation Baudendistel subpoenaed documents from both DSS and the Silverado entities.  In response to the subpoenas, DSS and the Silverado entities produced approximately 7,800 pages of records in seven separate document productions between June 2020 and September 2022.  Baudendistel testified he reviewed all the records, but he did not keep a chronology of his investigation and did not know when or in what order he reviewed the documents.  Baudendistel admitted he commingled the documents he received from the various productions.

Among the documents Baudendistel received early in his investigation were daily e-mail communications between Russo and DSS staff updating DSS on COVID cases at Beverly Place, including hospitalizations and deaths.  Baudendistel's review of the e-mails guided his understanding of the history and progression of the COVID outbreak at Beverly Place and determined the scope and manner of his investigation.

Baudendistel also reviewed transcripts of DSS's eight interviews with Russo. In those interviews, Russo discussed Beverly Place's prescreening process for new residents. Russo explained in the interviews that at the time of the COVID outbreak, Beverly Place had temporarily paused admission of new residents and that applicants were being approved on a case-by-case basis.

Baudendistel conducted his own interview of Russo. Baudendistel also interviewed a DSS investigator who had previously interviewed Russo. Baudendistel completed his investigation in June 2022. Baudendistel's final report was critical of DSS's investigation of Beverly Place and disagreed with DSS's conclusion that no statutory violations had occurred.

After Baudendistel's testimony and argument from the parties, the trial court ruled plaintiff had not met its burden of proving the case could proceed on evidence wholly independent of compelled statements. The trial court stated that it was "troubled" by Baudendistel's "failure to recall exactly when certain compelled documents were received or when he reviewed them, if at all." The court found that compelled statements taken by DSS from Russo and other Silverado employees impacted Baudendistel's overall conclusions, "which in turn was used to support the People's theory of elder abuse and criminal negligence." The trial court then dismissed the action against all defendants pursuant to Penal Code section 1385. This appeal followed.

**DISCUSSION**

## I.    Applicable law and standard of review

The Fifth Amendment privilege against compulsory self-incrimination states that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself."  In *Garrity v. New Jersey* (1967) 385 U.S. 493, 497 (*Garrity*), the United States Supreme Court held that Fifth Amendment protection applies when the government coerces an employee to relinquish the right to remain silent because of a threatened loss of employment.  Such coerced testimony cannot be used in criminal proceedings against the employee.  (*Id.* at pp. 497–498.)

The employees in *Garrity* were police officers questioned during an investigation into alleged fixing of traffic tickets.  Before being questioned, the officers were each warned that their statements might be used against them in a criminal proceeding, that they could refuse to answer if the disclosure might incriminate them, but refusal to answer would result in removal from office.  (*Garrity, supra*, 385 U.S. at p. 494.)  The Supreme Court held the officers' statements were compelled in violation of the Fifth Amendment:  "The choice given petitioners was either to forfeit their jobs or to incriminate themselves.  The option to lose their means of livelihood or to pay the penalty of self-incrimination is the antithesis of free choice to speak out or to remain silent." (*Garrity*, at p. 497.)

The coercion in *Garrity* was direct, as it involved an express threat of termination.  When there is no express threat, courts determine whether a person's statements were compelled by examining the person's subjective belief and the objective circumstances surrounding it.  A person claiming Fifth Amendment protection must have in fact believed his statements

8

were compelled upon threat of loss of employment, and this belief must have been objectively reasonable under the circumstances. (See *People v. Lazarus* (2015) 238 Cal.App.4th 734, 772, and cases cited therein.)  An appellate court reviews de novo a trial court's determination of whether a defendant's statements were compelled for purposes of the Fifth Amendment.  (*U.S. v. Santiago* (5th Cir. 2005) 410 F.3d 193, 202.)

If a trial court finds a defendant's statements were compelled, the prosecution must make an affirmative showing that the evidence it proposes to use is derived from a source wholly independent of the compelled statements.  (*Kastigar v. U.S.* (1972) 406 U.S. 441, 460 (*Kastigar*).)  We review the trial court's determination as to whether the prosecution has sustained this burden under the substantial evidence standard. (*People v. Singleton* (2010) 182 Cal.App.4th 1, 14.)

## II.    Russo's statements were compelled

Plaintiff does not challenge the trial court's finding that Russo subjectively believed his communications with DSS were compelled.  Plaintiff contends the trial court erred, however, in determining that Russo's belief was objectively reasonable under the circumstances.

Plaintiff claims Russo's belief was not objectively reasonable because none of the statutes he identified as compelling his statements to DSS mention an administrator's right to invoke the Fifth Amendment, and none penalize invocation of that right.  That argument is inconsistent with established case law holding that Fifth Amendment protection applies even in the absence of any express threat of employment termination.  (See, e.g., *United States v. Wells* (9th Cir. 2022) 55 F.4th 784, 797; *McKinley v. City of Mansfield* (6th Cir. 2005) 404

9

F.3d 418, 436; *United States v. Vangates* (11th Cir. 2002) 287 F.3d 1315, 1321.) The statutes that sanction an administrator's failure to cooperate in a DSS investigation accordingly need not mention the Fifth Amendment nor penalize its invocation. The statutory penalties imposed for failure to cooperate expressly include termination of an administrator's employment.

Health and Safety Code section 1569.58, subdivision (a)(1), for example, authorizes DSS to "prohibit any person from being a licensee, . . . or being an administrator, officer, director, member, or manager of a licensee . . . and may further prohibit any licensee from employing, or continuing the employment of, or allowing in a licensed facility . . . any employee . . . who has . . . [¶] [v]iolated, or aided or permitted the violation by any other person of, any provisions of this chapter or of any rules or regulations promulgated under this chapter."

Title 22, section 87405, subdivision (c) authorizes DSS to revoke the license of any RCFE whose administrator fails to comply with applicable regulatory requirements: "Failure to comply with all licensing requirements pertaining to certified administrators may constitute cause for revocation of the license of the facility."

We reject plaintiff's argument that Russo's belief he was compelled to speak to DSS was "based entirely upon speculation that general language" in the applicable statutes would cause him to lose his job had he refused to do so. The statutory language authorizing termination of employment is both specific and explicit.

The cases on which plaintiff relies as support for its position are distinguishable. *United States v. Smith* (11th Cir. 2016) 821 F.3d 1293 involved a state employee who voluntarily

10

waived his rights under *Garrity* when he spoke to law enforcement officers after his state employment had been terminated. Russo never waived his Fifth Amendment rights and his employment was never terminated. In *United States v. Palmquist* (2013) 712 F.3d 640, 644–645, criminal investigators expressly advised the government employee being investigated that he could not be fired for invoking his Fifth Amendment right to refuse to answer their questions. Russo never received such an advisement. The court in *United States v. Indorato* (1st Cir. 1980) 628 F.2d 711 rejected the defendant police officer's argument that he was compelled to answer a detective's questions on threat of termination because department rules provided for dismissal of any officer who refused to obey a superior's lawful orders. The applicable rules stated that, for a violation, an officer could be tried and, upon conviction, be subject to dismissal. The rules did not allow automatic dismissal for refusal to answer questions. (*Id.* at pp. 715–716.) Here, in contrast, the applicable statutory provisions do not limit DSS's authority to revoke an RCFE's license if an administrator fails to cooperate in an investigation or to exclude the administrator from entering any RCFE.

## III. No error in crediting expert testimony

Plaintiff contends the trial court improperly credited the testimony of defendants' expert, Goldman, because his opinions were speculative and outside the scope of permissible expert testimony.[2]

---

[2] Plaintiff does not challenge Goldman's qualifications to testify as an expert regarding operational and compliance issues relevant to RCFE's and their administrators.

Plaintiff's single example of the purportedly speculative testimony is Goldman's response, when asked during direct examination, whether he was aware of any specific instances in which DSS took disciplinary action against an RCFE because of a person's "attitude" during an interview. Goldman replied that he recalled an incident during a noncompliance conference between DSS and an RCFE's management. When the facility's management insisted they were a great company and asked why they were being picked on, "[t]hat resulted immediately in [DSS] moving toward a license revocation." Plaintiff complains that because "Goldman provided no facts regarding that company's noncompliance . . . . That situation cannot be compared to this case because that situation is completely unknown." These are issues that were potential subjects for cross-examination and go to the weight, not the admissibility of Goldman's testimony. (See *People v. Morales* (2020) 10 Cal.5th 76, 97.) Goldman's testimony, moreover, was not speculative, as it was based on his 30 years of experience in advising and representing thousands of RCFE's in their interactions with DSS.

The trial court did not abuse its discretion by overruling plaintiff's objections to Goldman's testimony that DSS would likely have decertified Russo or revoked Beverly Place's license had Russo refused to speak to DSS investigators as speculative or as encompassing an ultimate issue.[3] The testimony was not speculative, as Goldman was qualified as an expert in the field. Under Evidence Code section 805, "[i]t is neither unusual nor

---

[3] The record does not support plaintiff's assertion that it objected to this testimony on the ground that it constituted an improper legal conclusion. Goldman's opinion on the likelihood of DSS's enforcement action was not an improper legal conclusion.

12

impermissible for an expert to testify to an ultimate issue . . . ." (*People v. Doss* (1992) 4 Cal.App.4th 1585, 1596.)

## IV. *Kastigar* **findings**

Plaintiff does not challenge the trial court's finding, pursuant to *Kastigar, supra*, 406 U.S. at page 460, that plaintiff failed to show that evidence it proposed to use was derived from a source wholly independent of Russo's compelled statements. Instead, plaintiff claims it should not have been required to make such a showing because Russo's statements were not compelled. We reject that claim for reasons previously discussed. The trial court's findings are also supported by substantial evidence in the record.

## V. **Dismissal of action**

Plaintiff contends the trial court erred by dismissing the action, not only against Russo, but against the remaining defendants, because Russo's codefendants lacked standing to assert violation of Russo's Fifth Amendment rights. Plaintiff failed to raise this argument in the trial court below, either in opposition to defendants' motion to suppress, or at the hearing at which the trial court entered its dismissal order. Plaintiff therefore forfeited this argument on appeal. (*People v. Ponce* (2009) 173 Cal.App.4th 378, 381.) Plaintiff claims forfeiture should not apply because defendants bore the burden of demonstrating their due process rights would have been violated by the admission of compelled statements by Russo and others. (*People v. Badgett* (1995) 10 Cal.4th 330, 348 [testimony of third parties offered at trial should not be excluded unless defendant demonstrates that improper coercion impaired the reliability of the testimony]; *People v. Leon* (2016) 243 Cal.App.4th 1003, 1016 [a defendant has standing to assert that his own due process

13

right to a fair trial would be violated by admission of coerced statements made by a third party].)  Defendants argued in their motion to exclude that coerced statements by Russo and other Silverado employees were inherently unreliable and that use of those statements would violate defendants' due process right to a fair hearing.  Plaintiff failed to address this argument in its opposition to the motion to exclude and at the hearing in the trial court below.  It may not do so now for the first time on appeal. (*Ponce, supra*, at p. 381.)

The trial court dismissed the charges against all defendants pursuant to Penal Code section 1385, which authorizes the court do so on its own motion "in furtherance of justice."  (Pen. Code, § 1385, subd. (a).)  The party challenging a trial court's ruling under Penal Code section 1385 has the burden of showing an abuse of discretion.  (*People v. Jordan* (1986) 42 Cal.3d 308, 316.)  Plaintiff fails to sustain this burden.

## DISPOSITION

The order granting defendants' motion to suppress and dismissing the action against all defendants is affirmed.


CHAVEZ, J.

We concur:


ASHMANN-GERST, Acting P. J.


RICHARDSON, J.


14