Filed 4/10/26  P. v. Delacruz CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>REYMOND DELACRUZ,<br><br>    Defendant and Appellant. | D085372<br><br><br>(Super. Ct. No. SCE422976) |

APPEAL from a judgment of the Superior Court of San Diego County, John M. Thompson, Judge.  Affirmed as modified.

Jake E. Stanton, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Arlene A. Sevidal, Assistant Attorney General, A. Natasha Cortina and Elizabeth M. Renner, Deputy Attorneys General, for Plaintiff and Respondent.

Reymond Delacruz appeals from a judgment after the jury convicted him of (1) assault with a deadly weapon, and found that he personally used a deadly or dangerous weapon (a shovel) (Pen. Code §§ 245, subd. (a)(1), 1192.7(c)(23)); and (2) misdemeanor vandalism (§ 594, subd. (a)(b)(2)(A)).[1]

---

[1]    All undesignated statutory references are to the Penal Code.

Delacruz contends the evidence was insufficient to support the assault conviction because it did not support a conclusion that he used the shovel in a way that was likely to cause death or great bodily injury. We disagree. Substantial evidence supports the jury's finding that he used the shovel as a deadly weapon.

He also contends that the trial court had no authority to impose an indefinite stay-away order as part of a custodial sentence. On this point, the People concede the order was unauthorized, and we agree. We therefore will strike the protective order, but in all other respects affirm the judgment.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

### A.   The Incident

Delacruz and victim M.A. were strangers. Delacruz had a relative who was a neighbor of M.A. at the apartment complex, but the two had no personal relationship and no prior negative interactions before the incident. In February 2024, M.A. was home alone, with the solid wooden front door locked and the metal screen door unlocked. While in the kitchen he heard a metallic popping sound. Next, he saw the front door swing open and Delacruz standing in the doorway holding a five-foot long garden shovel with a six-inch blade.

M.A. recognized Delacruz, having seen him in the apartment complex on prior occasions. M.A. walked toward Delacruz and asked what he needed. Delacruz, who was about five feet ten inches tall and weighed about 200 pounds, pointed the shovel blade at M.A. and, using a jabbing motion, started walking toward him in a threatening manner. When they were about six feet apart, Delacruz twice thrusted the shovel toward M.A.'s torso and asked, "You want to fuck with me?" M.A. was scared and felt he was about to be hit. Dirt fell off the blade as Delacruz thrust forward.

2

Afraid and fearful Delacruz would strike him with the shovel, M.A. backed away, going through the hallway into his bedroom. (The front door was the only way in and out of the apartment.) Delacruz then left and M.A. called 911 immediately. When M.A. went to lock the front door, he found the metal locking mechanism was bent and jammed. It had not been damaged before the incident.

M.A. demonstrated Delacruz's movements for a responding deputy sheriff, and that demonstration was recorded on video and later shown to the jury. The video showed Delacruz's thrusting motion was forward and forceful with the blade pointed out—not a swing like a baseball bat or hockey stick— but a steady advance with the blade aimed at M.A.'s torso. The deputy collected the shovel as evidence, although it was not introduced at trial. A photograph taken next to a fire extinguisher of known height showed the shovel was between three- and four- feet long. M.A. was never struck by the shovel and had no physical contact with it.

## B.     The Verdicts and Sentencing

As noted above, the jury found Delacruz guilty of assault with a deadly weapon, and found true the allegation that he personally used a deadly or dangerous weapon (a shovel) (§§ 245, subd. (a)(1), 1192.7(c)(23)), and misdemeanor vandalism (§ 594, subd. (a)(b)(2)(A)).

The trial court sentenced him to two years in state prison for the assault and a concurrent 180 days for the vandalism. As part of the sentence, the court also issued an indefinite stay-away order directing Delacruz not to come near M.A.'s apartment complex.

## II.    DISCUSSION

### A.    Substantial Evidence Supports the Jury's Finding That Delacruz Used the Shovel as a Deadly Weapon

#### 1.    *Legal Background*

Assault with a deadly weapon has two parts:  the assault itself and the means used to commit it.  (*In re Raymundo M.* (2020) 52 Cal.App.5th 78, 85 (*Raymundo M.*).)  An assault is an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another.  (§ 240.)  The defendant must have actual knowledge of those facts sufficient to establish that the offending act by its nature would probably and directly result in physical force being applied to another.  (*People v. Williams* (2001) 26 Cal.4th 779, 782.)  A defendant has the present ability to injure if the defendant has the means and location to strike immediately, even if some steps remain, and even if the victim takes action to avoid being hurt.  (*People v. Chance* (2008) 44 Cal.4th 1164, 1172.)

Under section 245, subdivision (a)(1), a "deadly weapon" is any object used in a way that is capable of producing and likely to produce death or great bodily injury.  (*People v. Aguilar* (1997) 16 Cal.4th 1023, 1028.)  When the object is not inherently deadly, it must be used in a way that is not just capable of causing serious injury, but likely to do so.  (*In re B.M.* (2018) 6 Cal.5th 528, 533 (*B.M.*).)

In *B.M.*, our Supreme Court gave further guidance on the *Aguilar* standard:  "Likely" means "more than a *mere possibility*"—the probability of serious injury must be great when we are looking at the circumstances.  (*B.M.*, *supra*, 6 Cal. 5th at p. 534, italics added.)  It is appropriate in the deadly weapon inquiry to consider what serious injury could have resulted to the victim from the way the defendant was using the object.  (*Id*. at p. 535.)  But, "an aggressor should not receive the benefit of a potential victim

4

fortuitously taking a defensive measure or being removed from harm's way once an assault is already underway." (*Id*. at p. 537.) The "trier of fact may consider the nature of the object, the manner in which it is used, and all other facts relevant to the issue." (*Id*. at p. 533.) In the instant case, we conclude a garden shovel is not inherently deadly and therefore we consider how it was actually used. (*Id*. at p. 534.)

In performing our review, we apply the substantial evidence standard of review. In so doing, our role is not to reweigh the evidence or second-guess witness credibility; instead, we must presume every fact in favor of the judgment that could reasonably be inferred from the record. " 'When considering a challenge to the sufficiency of the evidence to support a conviction, we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citation.] We presume in support of the judgment the existence of every fact the trier of fact reasonably could infer from the evidence. [Citation.] If the circumstances reasonably justify the trier of fact's findings, reversal of the judgment is not warranted simply because the circumstances might also reasonably be reconciled with a contrary finding. [Citation.] A reviewing court neither reweighs evidence nor reevaluates a witness's credibility.' " (*People v. Covarrubias* (2016) 1 Cal.5th 838, 890.)

## 2. *Analysis*

Looking at the record in the light most favorable to the jury verdict we conclude substantial evidence supports the jury's finding that Delacruz used the shovel as a "deadly weapon" within the meaning of section 245, subdivision (a)(1).

Delacruz ostensibly used the shovel to pry open a locked, solid-wood front door, which damaged the metal locking mechanism. From this fact, the jury could reasonably conclude that the same tool used with similar force against a person would be capable of and likely to cause great bodily injury. A shovel that can damage a metal lock is not weak or flimsy. The jury was entitled to treat what the shovel did to the door as evidence of what it could do to a person. (See *B.M.*, *supra*, 6 Cal.5th at p. 530.)

Once inside, Delacruz advanced on M.A. in a confined space with only one exit, pointed the blade directly at M.A.'s torso, and thrust it toward him twice while stepping forward. M.A. was fearful and felt he was about to be hit. The thrusts were hard enough to knock dirt off the blade. The jury watched the video of M.A.'s demonstration, which showed the blade was being driven forward in a way consistent with striking a person. At a distance of within six feet, Delacruz was close enough for the roughly five-foot shovel to reach M.A. when thrust forward with both hands.

These facts are meaningfully different from those in *B.M.* In that case, a minor pressed a dull butter knife against her sister's blanket-covered legs with modest force. The knife did not pierce the blanket, caused no injury, and was not aimed at a vulnerable part of the body. (*B.M., supra*, 6 Cal.5th at p. 538.) Here, by contrast, Delacruz was holding a metal garden shovel that had already shown it could damage a metal lock. He pointed the blade directly at M.A.'s torso and thrust it twice in a forceful, forward manner while moving toward M.A. in a space that M.A. could not easily escape. This case does not require guessing about what else the shovel could have done; rather, the evidence of how Delacruz actually used it is sufficient.

Delacruz argues that because his motion was a jab rather than a swing, and because M.A. was wearing a jacket, there was not enough evidence to

support the deadly weapon finding.  We are not persuaded.  Under *B.M.*, the focus is on the force used and the harm that could result from the actual manner of use, not whether the defendant picked the most dangerous possible technique.  (*B.M., supra*, 6 Cal.5th at pp. 534, 535.)  A metal blade thrust with two hands toward a person's torso in a tight space can cause serious injury, whether the motion is a jab or a swing.  In addition, a jacket likely would not protect against a metal blade when a 200-pound man drives it toward the torso.

The fact that M.A. was not struck does not change the result.  As *B.M.* made clear, a defendant should not benefit because the victim managed to get out of the way.  (*B.M., supra*, 6 Cal.5th at p. 537.)  M.A. avoided injury by backing down his hallway into his bedroom, until Delacruz left.  From these facts, a jury could reasonably infer that M.A.'s evasion, not any lack of danger, is why he was never hit.  (*See Raymundo M., supra*, 52 Cal.App.5th at p. 89.)

Delacruz relies on cases where objects were used with very limited force or aimed at minor parts of the body.  For example, in *In re Brandon T.* (2011) 191 Cal.App.4th 1491, 1498, a butter knife that broke and left only a small scratch was not a deadly weapon.  In *People v. Beasley* (2003) 105 Cal.App.4th 1078, 1087, a plastic vacuum cleaner attachment and a broomstick used against a victim's arms and shoulders, resulting only in bruising, were found to be nondeadly given their composition, weight, and the degree of force involved.  Those cases are not like this one.  Here, the weapon was a metal-bladed shovel that had already damaged a metal lock.  It was held with both hands in a forceful thrusting motion aimed at an unarmed man's torso in a small apartment.  The assault conviction is supported by substantial evidence.

**B.** **The Stay-Away Order Must Be Stricken**

      **1.** *Proceedings Below*

At sentencing, the trial court found Delacruz was not a suitable candidate for probation and imposed a custodial sentence. As part of that sentence, the court issued an indefinite stay-away order barring Delacruz from the specific address of the apartment complex where M.A. lived. The court did not cite any statutory authority. It also did not find good cause to believe that Delacruz posed a risk of intimidating or dissuading a witness or victim. The prosecution expressed uncertainty about whether a criminal protective order was proper, and the defense did not object but asked that any order be limited to M.A.'s specific apartment unit.

      **2.** *The People Concede the Order Was Unauthorized*

The People concede that the stay-away order was not authorized by law, and we agree.

Claims that a sentence is unauthorized may be raised for the first time on appeal and should be corrected whenever a reviewing court identifies the error. (*People v. Ponce* (2009) 173 Cal.App.4th 378, 382 (*Ponce*).)

Section 136.2, subdivision (a)(1), allows a trial court to issue protective orders during a criminal case. But courts have read that provision to allow protective orders only while the criminal action is pending. (*People v. Corrales* (2020) 46 Cal.App.5th 283, 286 (*Corrales*); *People v. Stone* (2004) 123 Cal.App.4th 153, 159.)

In response, the Legislature added subdivision (i) to section 136.2, which allows postconviction protective orders lasting up to 10 years, but only when the defendant is convicted of domestic violence, certain sexual offenses, street terrorism, or crimes requiring sex offender registration. (§ 136.2, subd. (i)(1); *Corrales*, *supra*, 46 Cal.App.5th at p. 286.) Outside of those categories, section 136.2 does not give the trial court statutory authority to impose the

8

postconviction protective order. (*Ibid*.; accord, *People v. Garcia* (2022) 76 Cal.App.5th 887, 901 (*Garcia*).)

A criminal protective order must also rest on a finding of good cause to believe that the defendant is likely to try to intimidate or dissuade a victim or witness. The fact that a victim was harmed or threatened with harm is not enough on its own. (*Babalola v. Superior Court* (2011) 192 Cal.App.4th 948, 962 (*Babalola*).)

The order here was unauthorized on two independent grounds. First, it was indefinite in duration and not tied to the pendency of the criminal proceedings. The trial court denied probation, so the order was not authorized as a condition of probation. A postjudgment restraining order imposed under these circumstances falls outside the authority granted by section 136.2 and must be stricken. (*Ponce, supra*, 173 Cal.App.4th at p. 383; *Garcia, supra*, 76 Cal.App.5th at p. 901.) In *Garcia*, the defendant was convicted of robbery and assault with a deadly weapon, not domestic violence, and the Court of Appeal held the trial court had no statutory authority to impose a postconviction protective order. (*Id.* at pp. 890, 901.) The same is true here: Delacruz was convicted of assault with a deadly weapon and misdemeanor vandalism, neither of which is a qualifying offense under section 136.2, subdivision (i)(1).

Second, the trial court never made a finding of good cause to believe Delacruz posed an ongoing risk of intimidating or dissuading M.A. or anyone else at the complex. Nothing in the sentencing record shows the court considered that question. A finding of harm or the threat of harm in the past does not, by itself, satisfy the required showing that future intimidation or dissuasion is reasonably likely to occur. (*Babalola, supra*, 192 Cal.App.4th at p. 964.)

9

In sum, we agree with the parties, and we accept the concession:  the stay-away order must be stricken.

### III.    DISPOSITION

The protective order is stricken.  In all other respects, the judgment is affirmed.

KELETY, J.

WE CONCUR:


DATO, Acting P. J.


BUCHANAN, J.